DUBOSE ET, PLAINTIFFS, *v.* LOWE, DEFENDANT.

Municipal Court, Cincinnati.

No. 806301.   Decided April 24, 1963.

464

Mr. *Don R. Gardner*, for plaintiffs.
Mr. *Leo J. Breslin*, for defendant.

BETTMAN, J. This matter is before the Court on Motions for Summary Judgment pursuant to Section 2311.041, Revised Code, filed by plaintiffs and defendant, together with their stipulation of facts.

The facts of the case may be summarized as follows:

Plaintiff Dubose's automobile was damaged in a collision with an automobile driven by defendant on May 6, 1961. The said automobile was mortgaged to General Motors Acceptance Corporation, and was covered by a $100 deductible collision insurance policy issued by Motors Insurance Corporation. On May 26, 1961, said automobile was lawfully repossessed by GMAC under the terms of its mortgage. On June 16, 1961, Motors Insurance Corporation paid GMAC $227.50 (the value

of the vehicle at the time of the collision, less the $100 deductible and less $82.50 salvage value).

On July 5, 1961, the following letter was received by one of the attorneys acting on defendant's behalf:

"Your insured: Richard Lowe

"Our insured: Charles Dubose and GMAC

"Dear Mr. Fries:

"We have now completed our claim settlement on a total loss basis. The value of the car was $410.00 and the salvage was sold for $82.50, making the net loss $327.50. As we discussed during our conversation of May 22, 1961, this car was repossessed by GMAC and they suffered the deductible loss of $100.00. Our loss was $227.50.

"I will appreciate you letting me know the status of the injury claim so that we can diary our file accordingly.

Very truly yours,
/s/ Nancy Davis
Nancy L. Davis
Claim Department
Motors Insurance Corporation"

On October 30, 1961, in consideration of the payment of $700 Dubose executed a full release of defendant. The petition prays judgment on behalf of Motors Insurance Corporation in the sum of $227.50.

Defendant contends that as a matter of law plaintiff insurance company is not subrogated to any rights of its co-plaintiff Dubose and, secondly, that even if it be subrogated, Dubose's release is a complete defense against his subrogee.

Defendant bases his contention that plaintiff Insurance Company is not subrogated to any rights Dubose may have against defendant on the fact that the only written assignment is one by GMAC to Motors Insurance. Without reviewing all the clauses in the insurance policy and in the chattel mortgage, which are part of the stipulations of fact, suffice it to say that a consideration of them makes clear that Motors Insurance had not only the right but the legal duty to pay GMAC and on payment is, to the extent of the payment, subrogated pro tanto to any action which Dubose may have against Lowe for negligently causing the loss.

The more interesting question is whether Dubose's com-

plete release of Lowe is a bar to action by his subrogee, Motors Insurance. The problem of the effect on a subrogated insurer of a release given a tort feasor by its insured and the analogous problem of the effect of a judgment in litigation between the insured and the tort feasor, have plagued Ohio Courts for some time.

The broad principle has often been stated that the entire injury suffered by an individual as the result of a tortious act gives rise to a single cause of action and a subrogated insurer who has paid part of the insured's damages becomes the joint owner of an indivisible chose in action. *Holibaugh* v. *Cox,* 167 Ohio St., 340, 148 N. E. (2d), 677 (1958). The Supreme Court's temporary departure from this rule in *Vasu* v. *Kohlers, Inc.,* 145 Ohio St., 321, 61 N. E. (2d), 707 (1945), to permit a separation of personal injuries from property damage was reversed in *Rush* v. *Maple Heights,* 167 Ohio St., 221, 147 N. E. (2d), 599 (1958). Generally, therefore, a release by an insured or the conclusion of litigation between an insured and the wrongdoer would be thought to terminate all rights of an insurer against the wrongdoer.

Such was the reasoning of the 8th District Court of Appeals in *Allstate Insurance Co.* v. *Dye,* 113 Ohio App., 90, 170 N. E. (2d), 862 (1960). In that case plaintiff insurance company had paid its insured, defendant Dye, some $866, his property damage less the $50 deductible. Dye subsequently settled his claim against the tort feasor and on payment of $3,000 gave a complete release. The Court gave judgment for plaintiff, saying:

"No legal basis can be found, however, to support the right of a subrogee to maintain an action against a tort-feasor where the subrogor, after assigning a part of his claim to the subrogee, settles his claim against the tort-feasor, which settlement is evidenced by a full release without reservation or notice of the subrogee's interest in an indivisible cause of action."

The Supreme Court of Ohio has, however, clearly ruled that even though Ohio has adopted the single cause of action theory —that there is but one cause of action against a wrongdoer for injuries caused one person by a tort, an exception will be made for a subrogated insurer. In Syllabus 2 of *Hoosier Casualty*

*Co.* v. *Davis*, 172 Ohio St., 5, 173 N. E. (2d), 349 (1961), 13 Western Reserve L. R., 442, the Court held:

"Where by virtue of a prior contract of indemnity and subrogation, an insurer pays its insured for property damage sustained and becomes thereby subrogated to the rights of its insured to the amount of such payment, such insurer may prosecute a separate action against the party causing such injury to the extent of the amount paid under such contract."

Even before the Supreme Court so ruled, the 6th District Court of Appeals had made the same exception in *American Insurance Co.* v. *Ellsworth Freight Lines, Inc.*, 113 Ohio App., 426, 178 N. E. (2d), 819 (1960). Judge Fess, speaking for the Court, reviewed the decisions in Ohio and other states and justified the exception on the logic that since an insured could proceed against a tort feasor after recovering part of his damage from his insurer, conversely the insurer should not be estopped from prosecuting its part of the cause of action by reason of the fact that the insured had already recovered from the tort feasor for his personal injuries.

Despite the augustness of the authority, this Court finds the rule as stated unnecessarily broad. It cannot be reconciled with the historic and logical basis for the single cause of action rule. That rule was founded on the sound conclusion that a tort feasor should not be harassed with a multiplicity of suits. Literally read, the Supreme Court's language, above quoted, could mean that if the injured party had several insurance companies each insuring him against some risk to his person or property, the tort feasor could be subjected to separate suits by the injured party and by each of the subrogated insurance companies. In an era when most people carry several types of insurance coverage this will result in the same issues being litigated several times—very possibly with inconsistent results.

The more compelling logic is that set forth in Judge Taft's concurring opinion in the *Hoosier Casualty case*. The issue should be determined on the basis of knowledge. If the wrongdoer knows that there is an insurer-subrogee and fails to assert his right to require that the insurer-subrogee be made party to an action by the insured he will be deemed to have waived that right and may be subjected to another suit. Conversely, if a wrongdoer does not have knowledge of the existence of an

insurer-subrogee and either settles with an injured insured and obtains a release or fails to move that the subrogated insurer be made party to the litigation, the release or the termination of the litigation, as the case may be, should conclusively end any rights of the insurer-subrogee against him. It would seem neither fair nor logical to permit an insurer to prosecute a tort feasor, after the latter has settled or litigated what he thought was the entire claim, not knowing of any subrogated claim of the insurer.

This is the real basis of the decision in *Allstate* v. *Dye, supra.* As pointed out by the Court:

"There is not the slightest indication that Victor (the tort feasor) intended to or was given to understand that only a part of a single cause of action against him was being settled."

In these situations knowledge shoulders its possessor with certain duties. If an insured has been partly paid by his insurer he has a duty to so advise the tort feasor when he makes a settlement and gives him a release, or be liable to his insurer for the subrogated amount.

If the tort feasor knows of the interest of an insurer he must move for his joinder in an action or be subject to a second suit. Likewise if he knows of an insurer-subrogee's rights and without regard for such rights settles with the insured, the insured's release cannot be used to defeat the rights of the insurer-subrogee.

This principle is indirectly born out in *Pacific Fire Ins. Co.* v. *Wyatt,* 35 Ohio Law Abs., 336, 40 N. E. (2d), 947 (1940). After an insured had been paid part of his damages by his insurer he made claim for the balance of his damages from the tort feasor. The tort feasor paid these non-insured damages and insured gave him a general release. Insurer then sued its insured claiming the release precluded it from recovering from the tort feasor. The 9th District Appellate Court found for defendant-insured, reversing the lower Court. Since the suit was one by the insurer against its insured, the Court emphasized the good faith of the defendant, specifically, that he had made no claim against the tort feasor except for his uninsured damages. By inference, however, the Court's holding must be construed that the insurer would not be barred in an action for its subrogated damages by the general release given by its in-

sured since an analysis of the facts made clear that the tort feasor knew at the time he procured the release that he was only paying the "uninsured portion."

In *Motorists Mutual Ins. Co.* v. *Gerson,* 113 Ohio App., 321, 177 N. E. (2d), 790 (1960), insurer had paid insured $119 for his property damage less the $50 deductible. Insured subsequently gave tort feasor a complete release on payment of $50. The tort feasor's defense to the Insurance Company's suit for its subrogated portion of the damages, that he had received a release from the insured, was rejected by the Court of Appeals for the 9th District.

"From an examination of all the facts in this case," said the Court, "the only conclusion that can be reached is that the wrongdoer, Mr. Gerson, or his insurance representative, had full knowledge of all the facts concerning the insurance carried by Mr. Stone, and the subrogation rights which legally follow such a contract of insurance."

Courts in other jurisdictions have reached the same conclusion, that the knowledge or the lack of knowledge by the tort feasor of the existence of a subrogee is conclusive of the question whether a release procured from the insured-subrogor is no defense or a complete one. See *Wolverine Ins. Co.* v. *Klomparens,* 273 Mich., 493, 263 N. W., 724 (1935); *Pittsburg C. C. & St. L. Ry.* v. *Home Insurance,* 183 Ind., 355, 108 N. E., 525 (1915); *Mitchell* v. *Holmes,* 9 Cal. App. (2d), 461, 50 Pac. (2d), 473 (1935); *American Auto Ins.* v. *Clark,* 122 Kans., 445, 252 Pac., 215 (1927); *Pennsylvania Fire Ins.* v. *Harrison,* La. , 94 So. (2d), 92 (1957).

There being no question, on the facts stipulated in the case at bar, that defendant, at the time he paid plaintiff Dubose and obtained the release, knew of Motors Insurance Corporation's interest as subrogee, defendant's motion for summary judgment must be overruled as to plaintiff Motors Insurance.

Under the provisions of Section 2311.041, Revised Code, the Court cannot grant summary judgment unless all issues of fact are resolved. Since we have here no stipulation on the issue of the negligence of either party, plaintiffs' motion for judgment must likewise be overruled and the matter set down for hearing on that issue.