EMPLOYERS HEALTH INSURANCE, Plaintiff-Appellant,

v.

GENERAL CASUALTY COMPANY OF WISCON-SIN, Defendant-Respondent-Petitioner,

William J. KLEIN, Defendant.

Supreme Court

*No. 89-1021. Submitted on briefs January 25, 1991.—Decided May 13, 1991.*

(Also reported in 469 N.W.2d 172.)

937

For the defendant-respondent-petitioner there were briefs by *Stuart B. Eiche* and *Schulz, Schapekahm & Eiche, S.C.,* Milwaukee.

For the plaintiff-appellant there was a brief by *Linda Vogt Meagher, Daniel J. O'Brien* and *Schellinger & Doyle, S.C.,* Brookfield.

Amicus curiae brief was filed by *Noreen J. Parrett* and *La Follette & Sinykin,* Madison for Wisconsin Insurance Alliance.

Amicus curiae brief was filed by *D. J. Wies* and *Johnson, Weis, Paulson & Priebe, S.C.*, Rhinelander for Wisconsin Academy of Trial Lawyers.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Employers Health Ins. v. Gen. Cas. Co. of Wisconsin*, 154 Wis. 2d 696, 454 N.W.2d 10 (Ct. App. 1990), reversing an order of the Milwaukee county circuit court, Judge Patricia D. McMahon. Employers Health Insurance brought an action to determine its right to subrogation under its medical insurance contract with Hugh J. Oldenberg, the insured. Employers Health sought reimbursement from General Casualty Company, which paid benefits to Hugh J. Oldenberg, its insured, under the uninsured motorist coverage provisions of its automobile liability policy.

The circuit court granted summary judgment to General Casualty Company of Wisconsin and dismissed the summary judgment motion of Employers Health. The court of appeals reversed the circuit court, holding that summary judgment should be granted in favor of Employers Health under the terms of the insurance policies and the Wisconsin uninsured motorist statute, sec. 632.32(4)(a), Stats. 1987–88.[1] We reverse the decision of

---

[1]Section 632.32(4)(a), Stats. 1987–88, provides:

**(4)** Required Uninsured Motorist and Medical Payments Coverages. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

(a) Uninsured motorist. 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sick-

the court of appeals.

The issue presented in this case is whether Employers Health, a health insurer that paid medical benefits to its insured, may maintain an action for subrogation to recover these medical payments from General Casualty, the insured's automobile liability carrier that made payments to the insured for bodily injury (without specifying a particular sum for medical payments) under its uninsured motorist coverage. We conclude that Employers Health may not maintain the subrogation action under either the terms of its policy or the doctrine of equitable subrogation.

## I.

The facts are not in dispute. On October 23, 1985, the insured was seriously injured in an automobile accident involving an uninsured motorist, William J. Klein. There is no dispute that Klein negligently caused the injury. Both Employers Health and General Casualty paid benefits to the insured under the terms of their respective insurance policies.

Employers Health paid medical benefits to the insured under a group policy in the amount of $54,853.23

---

ness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy.

2. In this paragraph "uninsured motor vehicle" also includes:

a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction.

b. An unidentified motor vehicle involved in a hit-and-run accident.

3. Insurers making payment under the uninsured motorists' coverage shall, to the extent of the payment, be subrogated to the rights of their insureds.

for medical expenses incurred from injuries in the automobile accident. Under its contract with the insured, Employers Health was subrogated to the insured's "right to recover damages from a responsible third party." In September of 1987, Employers Health wrote General Casualty seeking subrogation of the insured's medical expenses.

During the fall of 1987, approximately two years after the accident, General Casualty settled its insured's claim under its uninsured motorist coverage by purchasing an annuity for him with a monthly payment of $2,700 for life.[2] General Casualty did not itemize its settlement, but General Casualty asserts in this action that its settlement covered all of the insured's claimed losses for bodily injury, including medical expenses.

Employers Health maintains that General Casualty has both a contractual and statutory obligation to pay the insured's medical expenses and that Employers Health's policy with the insured entitles it to subrogation against General Casualty.

The court of appeals held for Employers Health, basing its decision largely on its interpretation of the language of the two insurance policies.[3] It concluded that

---

[2]General Casualty's uninsured motorist coverage provides in pertinent part:

Part C—*Uninsured Motorist Coverage*

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

[3]The court of appeals also based its conclusion on sec. 632.32(4)(a), Stats. 1987–88, requiring auto liability insurers to provide uninsured motorist coverage.

Employers Health's policy expressly provides that it is subrogated to the insured's right to recover damages from a "responsible third party" and that it may recover benefits paid under the policy for which any other insurance provides medical pay coverage or medical expense coverage is available to the insured.

The court of appeals further concluded that the "plain meaning" of the General Casualty policy is that General Casualty would pay all losses, including medical expenses, the insured is legally entitled to recover from the owner or operator of an uninsured vehicle, unless there is "other similar insurance."[4] Because the health insurance provided by Employers Health was not, according to the court of appeals, "other similar insurance," General Casualty is responsible for the insured's medical expenses.

After analyzing both Employers Health and General Casualty's insurance policies the court of appeals concluded that General Casualty is contractually bound to pay medical expenses and that Employers Health is entitled to reimbursement for medical payments it made on behalf of the insured. The court of appeals did not address Employers Health's claim for subrogation under equitable principles.

---

[4]General Casualty's policy provides:

*Other Insurance*

 If there is other applicable similar insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

 General Casualty's brief concedes that this provision is not pertinent to this litigation.

## II.

Employers Health maintains that its insured's policy gives it the right to subrogation against General Casualty. The language in the policy on which Employers Health relies reads as follows:

> "If, after payments have been made under the Policy, You or Your covered Dependent has a right to *recover damages from a responsible third party,* We shall be subrogated to Your rights to recover." (Emphasis added.)[5]

The policy does not define the phrase "recover damages from a responsible third party." When no extrinsic evidence is introduced to interpret the wording of the insurance contract, this court determines the interpreta-

---

[5]Employers Health's policy with the insured contained, *inter alia,* the following provisions relating to the company's right to recover sums paid to the insured:

**RECOVERY RIGHTS**

*RIGHTS OF SUBROGATION*

If, after payments have been made under the Policy, You or Your covered Dependent has a right to recover damages from a responsible third party, We shall be subrogated to Your rights to recover. You or Your covered Dependent shall do whatever is necessary to enable Us to exercise Our Right and shall do nothing after loss to prejudice it. If We are precluded from exercising Our right of Subrogation, We may exercise Our Right of Reimbursement.

*RIGHT OF REIMBURSEMENT*

If benefits are paid under the Policy and You or Your covered Dependent recovers from a *responsible third party* by settlement, judgment or otherwise, We have a right to recover from You or Your covered Dependent an amount equal to the amount We paid. (Emphasis supplied.)

tion as an issue of law, without deference to the circuit court or court of appeals. *Swart v. Rural Mut. Ins. Co.,* 117 Wis. 2d 478, 482, 344 N.W.2d 719 (Ct. App. 1984). The language of the policy should be given the common and ordinary meaning it would have in the mind of a lay person. *Reserve Life Ins. Co. v. La Follette,* 108 Wis. 2d 637, 645, 323 N.W.2d 173 (Ct. App. 1982). In interpreting the policy the court may consider the apparent object or purpose of the insurance, the subject matter of the insurance, the situation of the parties and the circumstances surrounding the making of the contract. *Swart,* 117 Wis. 2d at 482, citing *Chemtec Midwest Services, Inc. v. Ins. Co. of No. Amer.,* 290 F. Supp. 106, 109 (W.D. Wis. 1968).

Employers Health argues that the phrase "responsible third party" means a financially, contractually or legally responsible third party and that General Casualty is an entity financially, contractually and legally responsible under its policy and the uninsured motorist law to pay damages to an injured insured.

General Casualty argues that the phrase "recover damages from a responsible third party" refers to recovery of damages from the wrongdoer causing the insured's injury or illness. The word "damages" in the context of bodily injury cases ordinarily means pecuniary compensation to an injured person for loss resulting from an unlawful or negligent act or omission or negligence of another. General Casualty, an uninsured motorist carrier, paid its insured not because it committed an unlawful or negligent act or omission causing injury to the insured but because it has a contractual and statutory duty to make payments to its insured. The amount of the payment is measured by the damages the tortfeasor is liable to pay.

946

We are persuaded by General Casualty's argument. General Casualty is not the wrongdoer in this case. General Casualty's liability to the insured arises not from its conduct but from an uninsured motorist's negligent conduct. General Casualty's responsibility for compensating the insured arises from the insurance policy and the uninsured motorist statute.

Citing *New Amsterdam Casualty Co. v. Acorn Products Company,* 42 Wis. 2d 127, 166 N.W.2d 198 (1969), and *Travelers Indemnity Company v. Auto Driveaway Company,* 89 Wis. 2d 255, 278 N.W.2d 262 (Ct. App. 1979), Employers Health argues that subrogation rights do not arise exclusively from tort liability. We agree with Employers Health. *Acorn Products* and *Travelers Indemnity* are, however, distinguishable from this case.

In *Acorn Products* the court upheld the right of an insurer, which provided worker's compensation coverage for a general contractor (the insured), to sue a subcontractor that had breached its agreement to provide the insured general contractor with worker's compensation coverage. The insurer's right of action was based upon the defendant's (subcontractor's) breach of an express contract between the insured general contractor and the defendant, the subcontractor.

In *Travelers Indemnity,* Auto Driveaway entered into a contract with Travelers' insured to transport the insured's car across the country. The car disappeared, and Travelers paid its insured for the loss of the car. The court upheld Travelers' right of subrogation to its insured's cause of action against Auto Driveaway. Under federal law and contract law the defendant, Auto Driveaway, was primarily liable to the insured for the disappearance of the car, even if the car owner could not show Auto Driveaway was at fault.

In both *Acorn Products* and *Travelers Indemnity,* the insurer made payments to its insured and sought subrogation from a defendant who under applicable law was liable to the insured for damages for breach of contractual responsibilities to the insured. The insurers were seeking subrogation from an entity who had "wronged" the insured and caused the insured a loss. In the case at bar Employers Health is not seeking subrogation from an entity who has wronged the insured or caused the insured to suffer a loss. Neither General Casualty nor its insured has committed any wrong or breached any contract causing Employers Health to make payments under its policy. General Casualty fulfilled its contractual obligation to compensate the insured for losses from injuries caused by the uninsured motorist.

This case is similar to *Hamed v. Milwaukee County,* 108 Wis. 2d 257, 321 N.W.2d 199 (1982). In *Hamed,* however, the court was interpreting a governmental agency's right to subrogation under a statute. In this case we are interpreting an insurance company's right to subrogation under an insurance policy.

The plaintiff in *Hamed* was injured when a passenger aboard a public (county) bus fired a jelly bean from a slingshot and struck the plaintiff in the eye. The plaintiff sued the county under a theory of *respondeat superior,* alleging negligence on the part of the county's agent, the bus driver. Prior to trial, the Department of Industry, Labor and Human Relations (DILHR) awarded the plaintiff $10,000 under the Crime Victims Compensation Program. The issue in *Hamed* was whether DILHR was subrogated to the plaintiff's claim against the county pursuant to sec. 949.15, Stats. (1977), which provided that DILHR was subrogated to the cause of action of the plaintiff "against the person responsible

for such injury or death . . .." The statute did not define the phrase "person responsible for such injury or death," and legislative history did not cast light on the meaning of the phrase.

The *Hamed* court looked to the purpose of the doctrine of subrogation to interpret the statutory phrase. Subrogation, the court said, rests on equitable principles that someone (other than a volunteer) who pays for the wrong of another should be permitted to look to the wrongdoer to the extent that he has paid a debt or demand which the wrongdoer should have paid. Examining the words of the statute, the circumstances of the county's liability, and the principles of subrogation, the court concluded that the phrase "person responsible for such injury or death" referred to the person whose actions caused the injury and not to the county that was only vicariously liable for the acts of its employee who had caused the injury. *Hamed,* 108 Wis. 2d at 265.[6]

---

[6]In addition to *Hamed,* this court has held on other occasions that statutory liability without a showing of fault or wrongdoing does not provide a sufficient basis for subrogation. *See Interstate Fire & Casualty Co. v. City of Milwaukee,* 45 Wis. 2d 331, 334–35, 338–39, 173 N.W.2d 187 (1970) (holding that when a city is statutorily liable for damage caused by a mob, private insurers have no subrogation rights against the city; the city is not the tortfeasor), and *American Insurance Co. v. City of Milwaukee,* 51 Wis. 2d 346, 352–54, 187 N.W.2d 142 (1971).

Both parties' briefs refer the court to cases involving uninsured motorist coverage and worker's compensation. Employers Health notes that a number of courts have allowed employers or worker's compensation carriers who have paid benefits to employees to obtain reimbursement from the employee for benefits received from uninsured motorist coverage. *See e.g., Montedoro v. City of Asbury Park,* 174 N.J. Super. 305, 416 A.2d 433, 435 (1980); *Midland Insurance Co. v. Colatrella,* 102 N.J. 612, 510 A.2d 30, 33 (1986). Employers Health also points to cases in

949

We conclude in this case, as we did in *Hamed,* that language in a subrogation clause referring to the "responsible third party" does not include a right to subrogation against an entity that is not the wrongdoer causing the injury. A responsible third party in the context of Employers Health's subrogation agreement clearly refers to a party responsible for the insured's injury and not to an insurer providing uninsured motorist coverage to the insured.

Employers Health further contends that the Wisconsin uninsured motorist statute, sec. 632.32(4)(a), Stats. 1987–88, renders General Casualty a "responsible third party" within Employers Health's subrogation agreement. The uninsured motorist statute requires General Casualty to provide coverage for the "protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . .." Section 632.32(4)(a)1, Stats. 1987–88. Damages includes medical expenses.

---

which worker's compensation carriers were permitted to intervene in suits by employees against uninsured motorist carriers in order to recover benefits paid to the employees. *See e.g., Johnson v. Fireman's Fund Ins. Co.,* 425 So. 2d 224 (La. 1983).

General Casualty, on the other hand, points to cases holding that a worker's compensation carrier cannot set off against benefits it pays, amounts the worker recovers from his or her uninsured motorist carrier. *See e.g., Bill Hodges Truck Co. Inc. v. Humphrey,* 704 P.2d 94 (Okla. App. 1984).

While some issues raised by the worker's compensation cases are similar to those we discuss here, we do not find them helpful. As the parties acknowledge, no consistent approach exists among the various jurisdictions. More importantly, worker's compensation is based on statutes and involves policy considerations not necessarily at issue here.

Employers Health relies on *Nicholson v. Home Ins. Co.*, 137 Wis. 2d 581, 592, 405 N.W.2d 327 (1987), in which the court stated that "uninsured motorist coverage essentially substitutes for insurance that the tortfeasor should have had." Employers Health argues that because the purpose of the uninsured motorist statute is to give the insured the same protection he or she would have had for an injury caused by a motorist insured by a standard automobile policy, *Niemann v. Badger Mut. Ins. Co.*, 143 Wis. 2d 73, 77–78, 420 N.W.2d 378 (Ct. App. 1988), General Casualty becomes the responsible party.

We are not persuaded by Employers Health's reasoning. Although uninsured motorist coverage allows the insured to recover from his or her insurance company when the responsible person is uninsured, the uninsured motorist law does not provide insurance coverage for the uninsured motorist who is the tortfeasor. 12A Couch on Insurance 2d sec. 45:624, at p. 36 (Rev. ed. 1981). The insured purchases uninsured motorist coverage for his or her own benefit and protection.

The uninsured motorist law does not require that General Casualty provide liability insurance for Klein, the tortfeasor; General Casualty does not, as a result of the statute, stand in the shoes of the tortfeasor. The uninsured motorist coverage required by statute does not convert the insurance company into a tortfeasor or the tortfeasor's insurer. General Casualty's liability to its insured in this case is contractual, although it is based on the contingency of a third party's tort liability. As we explained earlier, statutory liability without any finding of wrongdoing does not provide a sufficient basis for subrogation.

In interpreting Employers Health's policy, we have examined the language of Employers Health's policy and the subject matter and purpose of each insurance policy, the uninsured motorist statute, and the principles of subrogation discussed in *Hamed.* We conclude that General Casualty is not a responsible third party under either the terms of Employers Health's policy or the uninsured motorist statute.

The excess coverage section of Employers Health's policy provides the second contractual basis upon which Employers Health relies to recover from General Casualty. Under this section of the policy, Employers Health will not pay any benefits "for which there is any other insurance providing medical pay coverage or medical expense coverage." Furthermore the insured assigns to Employers Health the right of reimbursement from the "medical payments" or "medical expense" insurer.[7] This excess coverage clause provides in effect that Employers Health advances payment of medical costs and will seek reimbursement from the other carrier. In contrast to the "third party responsible" language in the subrogation

---

[7]Employers Health's policy provides:

*Excess Coverage*

. . ..

No benefits will be payable under this Policy on account of any injury or Sickness caused by you, Your Dependent or any other party, for which there is any other insurance providing medical pay coverage or medical expense coverage available to You or Your covered Dependent, regardless of whether such other coverage is described as being primary, excess or contingent.

We will, nevertheless, process Your claim according to the provisions of the Policy and secure reimbursement from the medical payments or medical expense insurer.

You hereby assign to Us any right You have against such other insurer for reimbursement of medical expenses We have paid on Your behalf . . ..

provision, here Employers Health's policy refers to another insurer explicitly.

■

We conclude that General Casualty's uninsured motorist coverage is not insurance providing medical payments or medical expense as those terms are used in Employers Health's policy. "Medical payments" or "medical expense" refers to separate and divisible coverage, independent of other coverages provided by automobile insurance policies. *Severson v. Milwaukee Automobile Ins. Co.*, 265 Wis. 488, 491, 61 N.W.2d 872 (1953). In a typical automobile liability policy, medical payments coverage is separate from the bodily injury liability coverage. The insured generally pays a separate premium for medical payments or medical expense coverage, and separate limits of liability apply to each type of coverage.

The medical pay coverage is the insurer's absolute agreement to assume or pay medical expenses arising in an automobile accident, regardless of fault. It is in the nature of a separate and distinct accident or health insurance contract within the automobile liability insurance policy. 13A Couch on Insurance 2d sec. 48:71, at p. 54 (Rev. ed. 1982). In this case General Casualty's policy had a separate medical pay coverage. We do not decide whether Employers Health has any subrogation right under General Casualty's medical payments provision.[8]

---

[8]Employers Health's amended complaint refers to uninsured motorist coverage, not General Casualty's medical pay coverage. During the argument on the summary judgment motions General Casualty appeared to state that General Casualty might be obligated to reimburse Employers Health under the medical payments provision of the General Casualty policy. Employers Health's brief requests indemnity, at a minimum, under General Casualty's medical payments coverage. General Casualty's reply brief urges this court not to decide the issue because neither the

In *Severson v. Milwaukee Automobile Ins. Co.,* 265 Wis. 488, 491, 61 N.W.2d 872 (1953), we held that the injured passenger in the insured's automobile could recover both medical expenses under the medical payment coverage and damages (including medical expenses) under the liability coverage of the same policy. Each part of the insurance policy constituted a separate agreement.

The Wisconsin statutes also recognize the distinction between coverage for medical payments and uninsured motorist coverage. Section 632.32(4)(a), (b), Stats. 1987–88, requires automobile liability policies to contain two provisions: (1) uninsured motorist and (2) medical payments. The uninsured motorist provision allows the injured person to recover damages because of bodily

---

pleadings, the circuit court nor the court of appeals addressed this issue. We do not decide the issue because it has not been raised or fully argued or briefed in any court.

General Casualty's policy with the insured provides $5,000 in medical payments coverage as follows:

Part B—*Medical Payments Coverage*

We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury caused by accident and sustained by a covered person. We will pay only those expenses incurred within three years from the date of the accident.

"Covered person" as used in this Part means:

1. You or any family member while occupying, or as a pedestrian when struck by, a motor vehicle designed for use mainly on public roads or by a trailer of any type.

2. Any other person while occupying your covered auto.

. . .

Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under . . . Uninsured Motorist Coverage provided by this policy.

injury; the medical payments provision compensates the injured person for expenses incurred from bodily injury.

Employers Health's policy must be interpreted as referring to coverage by another insurer that provides substantially the same coverage Employers Health provides. Uninsured motorist insurance covers medical expenses as an element of personal injury damages. Uninsured motorist coverage providing for payment of losses, including medical expenses, upon proof of the uninsured driver's negligence, is thus significantly different from a standard medical expense policy paying only medical expenses without proof of fault. Had Employers Health intended to make its coverage excess over any policy of insurance that includes medical expense as an element of losses from bodily injury, it would have expressly so stated. It did not.

We conclude that Employers Health's right of reimbursement against other medical payment or medical expense coverage has no application to the uninsured motorist coverage General Casualty provides. For the reasons set forth we conclude that Employers Health has not contractually retained a right to seek subrogation from its insured's uninsured motorist carrier.

## III.

Subrogation, in addition to being a product of the parties' contract, may also exist by operation of law, that is, equitable subrogation. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 445, 360 N.W.2d 33 (1985). Thus, even in the absence of an express subrogation agreement, an indemnity insurer may still be entitled to receive subrogation. *Id.* at 446.

■

Subrogation derives, in part, from the equitable doctrine of preventing unjust enrichment and placing the loss ultimately on the wrongdoers. *Cunningham,* 121 Wis. 2d at 444; *American Ins. Co. v. City of Milwaukee,* 51 Wis. 2d 346, 351, 187 N.W.2d 142 (1971). The right to subrogation "arises, not as a direct legal consequence of the contract of the parties, but rather as a matter of doing justice after a balancing of the equities . . . [T]he agreement is merely a consideration—although an important consideration—in determining whether subrogation is appropriate." *Rock River Lumber v. Universal Mortg. Corp.,* 82 Wis. 2d 235, 242, 262 N.W.2d 114 (1978). Subrogation is permitted only when "the rights of those seeking subrogation have greater equity than the rights of those who oppose it." *First National Bank of Columbus v. Hansen,* 84 Wis. 2d 422, 429, 267 N.W.2d 367 (1978). The right to subrogation arises "when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *American Ins. Co.,* 51 Wis. 2d at 351.

Employers Health fails to show why it is entitled to recover from General Casualty under principles of equitable subrogation.

■

First, subrogation in this case cannot be premised on the principle of placing the burden on the responsible wrongdoer. 16 Couch on Insurance 2d, sec. 61:18, at p. 93 (Rev. ed. 1983). As we explained above, General Casualty is not the responsible wrongdoer nor does it provide insurance protection for the responsible wrongdoer. Employers Health cannot construe the benefits due the insured by General Casualty as emanating from the wrongdoer. *See,* 8D Appleman, *Insurance Law and*

*Practice* sec. 5128.35 (1981).[9]

Second, subrogation in this case cannot be premised on the principle that General Casualty has been unjustly enriched. Employers Health argues subrogation in this case is required to prevent General Casualty from being unjustly enriched by virtue of General Casualty's not compensating the insured for medical expenses.[10] Employers Health reasons, without any facts in the record supporting its assertions, that General Casualty took a "wait-and-see" approach to settling with its insured; that General Casualty settled with its insured after Employers Health paid medical expenses to avoid paying medical expenses; that General Casualty did not pay *all* losses incurred by the insured as required by the uninsured motorist statute and its insurance policy; and that General Casualty is unjustly enriched because it did not pay the insured the entire sum it was obligated to pay.

General Casualty asserts that it did not, as Employers Health claims, take a "wait-and-see" approach to its coverage and that it paid the insured what it was obligated to pay under its policy. Employers Health has not presented a record in this case showing that General

[9]Furthermore, in contrast to *Acorn Products* and *Travelers Indemnity,* discussed above, neither the insured nor General Casualty has a primary contractual obligation to pay the medical expenses. Accordingly, Employers Health should not be relieved of its obligations under its policy with the insured.

[10]Employers Health does not assert that the insured (who is not a party to this action) received a double recovery for medical expenses. One principle of subrogation is to avoid the insured's receiving a windfall double recovery. This principle of subrogation is inapplicable to this case.

Casualty has been unjustly enriched, and we therefore reject this argument.

Last, subrogation in this case cannot be premised on the ground that one indemnity insurer had an equity superior to the other. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 444–45, 360 N.W.2d 33 (1985). In this case, Employers Health and General Casualty are each secondarily liable to the insured. The Wisconsin statute requiring automobile insurance carriers to include uninsured motorist coverage in every auto policy does not make General Casualty a primary insurer. The uninsured tortfeasor, Klein, is the party who bears primary legal responsibility for the insured's medical expenses and other damages for personal injury. Nothing in the statute indicates that the legislature intended the uninsured motorist statute to affect the liability of insurers in relation to each other.

Both Employers Health and General Casualty are first party insurers. Each has contracted to make payments to the insured under the terms and conditions of the insurance policy in the event of injury. Once each has fulfilled its contractual obligation to the insured it has a right to subrogation against the wrongdoer. As between the two indemnity insurers who are secondarily liable in this manner there is no superior equity. Where equities are equal, there are no subrogation rights. 16 Couch on Insurance 2d, sec. 61:20 (Rev. ed. 1983).

Employers Health's payment to the insured does not give it an equitable right to subrogate against General Casualty any more than General Casualty's payment to the insured or General Casualty's statutory subrogation right (sec. 632.32(4)(a)3, Stats. 1987–88)[11] gives it

---

[11]Section 632.32(4)(a)3, Stats. 1987–88, provides that "Insurers making payment under the uninsured motorists' cover-

an equitable right sufficient to obtain subrogation against Employers Health. Neither insurance company possessed a greater equity vis-a-vis the other; each stood in an equal position.

In summary, we conclude that Employers Health has not retained a contractual right to seek subrogation from its insured's uninsured motorist carrier and has not demonstrated a right to subrogation under equitable principles. We therefore reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

---

age shall, to the extent of the payment, be subrogated to the rights of their insureds."