UNITED CAPITOL INSURANCE COMPANY, Plaintiff-Respondent-Cross Appellant,

v.

BARTOLOTTA'S FIREWORKS COMPANY, INC., Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 95–0031. Submitted on briefs January 11, 1996.—Decided February 21, 1996.*

(Also reported in 546 N.W.2d 198.)

On behalf of the defendant-appellant-cross respondent, the cause was submitted on the briefs of *Eric S. Darling* of *Schmidt, Darling & Erwin* of Milwaukee.

On behalf of the plaintiff-respondent-cross appellant, the cause was submitted on the brief of *John E. Cain* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J.   This case involves the construction of a specially tailored insurance contract between Bartolotta's Fireworks Company, Inc., which puts on fireworks displays for municipalities and others, and United Capitol Insurance Company. While the policy contained the near universal clause giving the insurance company the right to settle all claims, it also had a unique provision that Bartolotta pay the first $25,000 as "self insurance." Here, United Capitol settled and paid $35,000 on a claim, did not obtain Bartolotta's consent beforehand, and then demanded reimbursement from Bartolotta. Bartolotta claims that as a

288

matter of public policy and fair dealing, the contract must be construed to require Bartolotta's consent before settlement. We refuse to write a consent requirement into the contract because it is clear to us that Bartolotta bargained for this risk. We also reject Bartolotta's bad faith claim and affirm. On the cross-appeal, we reverse the denial of prejudgment interest to United Capitol.

The facts forming the damage claim made against Bartolotta are as follows.[1] On July 8, 1987, a thirteen-year-old boy burned his face and legs after tampering with an unexploded firework shell he found at a city of Waukesha park. He threatened to sue Bartolotta alleging that the shell was a remnant from its Fourth of July display. United Capitol subsequently investigated the claim on Bartolotta's behalf and decided to settle the matter for $35,000.

The current dispute arose in October 1988, after United Capitol tried to collect roughly $21,400 in reimbursement from Bartolotta. It alleged that Bartolotta owed the money under the "Self Insured Retention" clause of this policy.[2] Upon a motion for summary judgment, the trial court found that there were no relevant disputed facts and United Capitol was entitled to reimbursement as a matter of law.

---

[1] The appellate record does not include United Capitol's claim file. This court rejected Bartolotta's motion to supplement the appellate record because this file was never made part of the trial court record. Our analysis and statement of the facts, therefore, do not reflect anything within this file.

[2] The total "self insured retention" under the policy was $25,000. The amount United Capitol actually claimed reflected credits due Bartolotta.

■ On appeal, Bartolotta generally asserts that the trial court erred in interpreting the insurance contract and prematurely awarded summary judgment to United Capitol. The interpretation of an insurance contract presents a question of law which we review independently of the trial court. *See Milbrandt v. Huber*, 149 Wis. 2d 275, 291, 440 N.W.2d 807, 813 (Ct. App. 1989). Thus, our overall task is to determine the meaning of this insurance policy and whether the trial court erred in finding that no disputed facts existed which could prevent United Capitol from obtaining reimbursement. *See id.* at 287, 440 N.W.2d at 811.

Bartolotta first asserts that the insurance agreement violates public policy and United Capitol is thus precluded from seeking reimbursement under its terms, specifically focusing on United Capitol's failure to obtain consent prior to making settlement. We will therefore start with the language of the policy.

The clauses pertaining to the claims adjustment process provide:

1. **Insuring Agreement.**

   a. [United Capitol] will pay those sums that [Bartolotta] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

   . . . .

   (2) We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result; . . . .

The definitions section of the policy also provides that "[o]ccurrence means an accident" and that "suit" is defined by a "civil proceeding" where damages "to

290

which this insurance applies are alleged." Furthermore, in addition to the standardized clauses described above, the policy contains a "Self Insured Retention Endorsement" which adds that United Capitol's coverage would be in "excess of a $25,000 Self Insured Retention each claim, <u>for any claims that would otherwise be covered on a primary basis</u>." Moreover, the endorsement describes how United Capitol "shall <u>not</u> be obligated to advance any amounts within the Self Insured Retention . . . ." This section, however, still requires Bartolotta to notify United Capitol of any claims Bartolotta "paid or reserved" from its $25,000 of self insurance.

After reviewing these provisions, we conclude that the trial court correctly interpreted the agreement as enabling United Capitol to settle this boy's claim as an exercise of its "discretion" to "settle any claim." When interpreting an insurance policy, this court applies an objective test measuring how it would be understood by a reasonable person standing in the shoes of the insured. *See Milbrandt*, 149 Wis. 2d at 291, 440 N.W.2d at 813. Through this policy, Bartolotta gave United Capitol the "discretion" to settle claims made against it. A reasonable person would certainly associate the term "discretion" with the "power" to make decisions on his or her behalf. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 647 (1976). The insurance contract nowhere says that in exercising this "discretion," United Capitol must obtain Bartolotta's consent every time it decides to act on a claim. In fact, the "Self Insured Retention Endorsement" only describes how Bartolotta had to keep United Capitol informed of any settlements *it* chose to make within its $25,000 of self coverage. Thus, the parties considered how informa-

tion about the handling of various claims would be shared.

We reject Bartolotta's argument that the requirement that it keep $25,000 of self insurance somehow separates this single policy into two, leaving Bartolotta with absolute authority over small claims (those less than $25,000) and United Capitol with power over the remainder. Bartolotta gave its insurance company the authority to settle any claims made against it. In return, Bartolotta was assured of protection against any claim over $25,000 up to a maximum limit of $1,000,000. Although United Capitol had the authority to address claims under $25,000 in value, it would never be specifically concerned with such a claim because Bartolotta was fully responsible for paying it. Of course, as we noted previously, United Capitol required Bartolotta to keep it apprised of these low value claims for the obvious purpose of monitoring the risk of this client's business. If United Capitol learned that Bartolotta had been settling many claims in its area of responsibility, United Capitol might have been concerned that this insured presented a risk of a much bigger claim yet to come.

Likewise, we reject Bartolotta's argument that we avoid this construction because it leaves it vulnerable to exploitation by United Capitol. As Bartolotta correctly outlines in its brief:

> [United Capitol] could, in order to avoid the expense of allowing the claim to continue, agree to settle the case with the injured claimant for $25,001, even though the insurer had every reason to know that the case had a value nowhere near that amount.

Nonetheless, we are not convinced that this policy placed Bartolotta in an unfair position.

First, as we have described, Bartolotta could reduce the threat of a $25,001 claim by making a quick offer to the claimant to settle for even less than $25,000. Again, Bartolotta had to keep United Capitol informed of such settlements, but that does not mean that Bartolotta had to share with the claimant the fact that its insurer may offer a better settlement "to avoid [its] expense of allowing the claim to continue." As its illustration reveals, Bartolotta faced some limited risk of "exploitation" along the margins, but not so much that the contract should be deemed void as unconscionable. *Cf. Employers Health Ins. v. General Casualty Co.*, 161 Wis. 2d 937, 946, 469 N.W.2d 172, 175 (1991) (explaining that courts may consider relative bargaining position of the insured and insurer).

Second, we must also consider the context of this policy. *See id.* Bartolotta is engaged in a high-risk business. A reasonable person so engaged would anticipate that insurers may seek special concessions in exchange for underwriting these higher risks. *See generally* 1 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 1.48 (3d ed. 1995). Here, United Capitol believed that one way to offset the high risk of the fireworks industry was to bargain for the power to settle claims quickly. Thus, it sought and acquired the "discretion" to make settlements without having to consult with the insured. *See Casualty Ins. Co. v. Town & County Pre-school Nursery, Inc.*, 498 N.E.2d 1177, 1179 (Ill. App. Ct. 1986).

Having concluded that the trial court properly interpreted the contract as allowing United Capitol to act without Bartolotta's consent, we turn to the alternative argument that these provisions violate public policy. Bartolotta specifically contends that this agree-

ment violates the general rule that insurers may not seek indemnification or subrogation (i.e., reimbursement) from their insured. *See Rural Mut. Ins. Co. v. Peterson*, 134 Wis. 2d 165, 170, 395 N.W.2d 776, 778 (1986). Although it acknowledges that exceptions to this doctrine exist, *see id.* at 170-71, 395 N.W.2d at 778, Bartolotta claims that none are applicable to this contract. It also cites to authority from other jurisdictions, such as *Employers' Surplus Line Ins. Co. v. City of Baton Rouge*, 362 So. 2d 561 (La. 1978), which hold that as a matter of public policy, an insurer's right to obtain reimbursement for a claim is conditioned upon obtaining the insured's consent before settlement. *Id.* at 565.

As United Capitol describes, however, the courts holding to the consent requirement have simply engrafted a "consent requirement" onto the policies as a matter implied in law. *See id.* at 564-65; *see also St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hosp.*, 584 So. 2d 1316, 1326 (Ala. 1991). United Capitol submits, however, that a consent requirement is not good public policy because it discourages settlements. The insured, in essence, is encouraged to use the consent requirement as a veto against settlement since the insurer is the party who must bear the costs of any defense. Indeed, the insured has every reason to use the consent requirement as a bar to settlement because it will want to protect its deductible or amounts that would be owed under a self insurance clause. United Capitol cites *American Home Assurance Co. v. Hermann's Warehouse Corp.*, 521 A.2d 903 (N.J. Super. Ct. App. Div. 1987), *aff'd*, 563 A.2d 444 (1989), as an example of a jurisdiction which rejected the consent requirement for these reasons. *See id.* at 905; *see also*

*Employers' Surplus Line*, 362 So 2d at 565-66 (Dennis, J., concurring in part; dissenting in part).

We agree with United Capitol that a consent requirement is not appropriate public policy for this state and will not read it into this agreement. Our holding serves the goal of fostering settlement, a recognized policy in Wisconsin. *See State Medical Soc'y v. Associated Hosp. Serv.*, 23 Wis. 2d 482, 492, 128 N.W.2d 43, 49 (1964). Moreover, allowing an insured to contract away the right to be consulted enables it to better bargain for specialized coverage which it may deem appropriate. *See Rural Mut.*, 134 Wis. 2d at 170, 395 N.W.2d at 778. We recognize that a de jure consent requirement would offer some protection for insureds who may be exploited by insurers, but insureds who are burned by one insurance company may find refuge in the marketplace by seeking coverage from another insurer. *See American Home Assurance*, 521 A.2d at 906.

We next turn to Bartolotta's bad-faith claims. Here, it urges in two ways that United Capitol's conduct serves as a bar to reimbursement. First, Bartolotta claims that United Capitol did not properly handle the adjustment process, arguing that it ignored facts which suggested that the dud firework had been left behind by a different company on an earlier occasion. Second, Bartolotta asserts that United Capitol, after dealing with this claim, wrongfully terminated coverage. Thus, we must assess how Bartolotta's factual allegations measure against United Capitol's implied duty of good faith, a question of law which we review independently. *See Grube v. Daun*, 173 Wis. 2d 30, 72, 496 N.W.2d 106, 122 (Ct. App. 1992).

Bartolotta supports its position regarding United Capitol's alleged sloppy handling of the claim with the following facts. It provides an affidavit from an expert claims manager which suggests that United Capitol acted prematurely when it settled the claim; specifically, it failed to completely investigate whether Bartolotta's firework actually caused the boy's injuries and did not appropriately consider that the boy was contributorily negligent because he dismantled a firework found lying on the ground.

Bartolotta provides a similar affidavit from a trial attorney who claims that United Capitol paid too high a settlement given the scope of the boy's injuries. Bartolotta thus contends that it has raised sufficient facts to warrant a trial on whether United Capitol jumped the gun when it settled this claim.

To succeed, Bartolotta must show that "important facts were recklessly ignored and disregarded" during United Capitol's adjustment of the claim. *See Mowry v. Badger State Mut. Casualty Co.*, 129 Wis. 2d 496, 520-21, 385 N.W.2d 171, 182 (1986). When we examine Bartolotta's allegations in their best light, however, they reveal only that United Capitol could have settled this claim for less, not that it had absolutely no reason to settle. We therefore hold that United Capitol is entitled to summary judgment.

The duty of good faith serves to balance the interests of the insured against its insurer, which may be tempted to avoid the costs of defense via a quick settlement and thereby sacrificing the insured's deductible. *See id.* at 509-10, 385 N.W.2d at 178. And because the duty of good faith is implied from the terms of the policy, *see id.* at 510, 385 N.W.2d at 178, the limits of the insurer's good faith obligations are accordingly set by the terms of the policy. *See id.* at 511, 385 N.W.2d at

178. As we outlined above, when it accepted this policy, Bartolotta gave United Capitol substantial authority to act on its behalf. Thus, to prove that United Capitol acted in bad faith, its acts would have to be outside the bounds of the broad power that Bartolotta gave to United Capitol. Bartolotta, however, has failed to meet this standard.

United Capitol faced a claim by a curious boy who was apparently injured by one of the explosives that Bartolotta left behind. The boy found this shell, coincidentally, only a few days after Bartolotta had set off a display. United Capitol realized that it and Bartolotta could be found liable for potentially tragic injuries to an arguably sympathetic jury. Since United Capitol had the authority to investigate, value and settle any claim, and did so, we cannot say that United Capitol acted in bad faith by striking when the iron was hot and moving this case to settlement.

Bartolotta's second bad-faith claim is focused on United Capitol's termination of the policy during the investigation of this claim. It asserts that United Capitol had no lawful reason for terminating coverage. *See* § 631.36(2), STATS. Here, Bartolotta seems to suggest that United Capitol terminated coverage because its client was becoming too meddlesome. We conclude, however, that Bartolotta waived its right to pursue this argument.

These specific allegations were first raised to the trial court in the second summary judgment proceeding. Thus, United Capitol responded that Bartolotta waived its right to proceed. The trial court agreed.

■

Whether the trial court correctly read Bartolotta's pleadings not to include this second bad-faith claim presents a question of law which we review de novo.

*See Preloznik v. City of Madison*, 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582-83 (Ct. App. 1983). Our specific task is to determine if Bartolotta's original pleadings set out sufficient facts to raise the issue. *See id.* at 116, 334 N.W.2d at 582-83.

Our analysis thus turns to the pleadings themselves. In pertinent part, Bartolotta's response states that "the plaintiff breached its contractual good faith obligation to the defendant, including but not limited to the following . . . ." The pleadings then describe how United Capitol failed to notify Bartolotta about the claim and fully investigate the claim. Moreover, Bartolotta's pleadings explain how United Capitol did not keep it informed of the progress of negotiations and failed to obtain its consent before settlement. Bartolotta also alleges that United Capitol failed to consider the best interest of its insured.

While Bartolotta concedes that these pleadings focus on the factual basis of its primary bad-faith claim described above, it nonetheless asserts that the "including but not limited to the following" language provided a sufficient signal to United Capitol that it was going to raise the termination issue. The factual details, Bartolotta explains, could have been fettered out during discovery had United Capitol done any. Thus, it submits that its pleadings are sufficient. We disagree.

We acknowledge the general rules requiring courts to "liberally construe" pleadings, *see Grams v. Boss*, 97 Wis. 2d 332, 351-52, 294 N.W.2d 473, 483 (1980), but a pleading must nonetheless present *some* factual basis supporting the stated claim. *See id.* at 351-53, 294 N.W.2d at 483; *see also Wilson v. Waukesha County*, 157 Wis. 2d 790, 799, 460 N.W.2d 830, 834 (Ct. App.

1990). The targeted pleading, however, provides absolutely no factual basis for the other "bad-faith" claims that it was supposed to suggest existed. We therefore conclude that the pleadings are insufficient to state Bartolotta's bad-faith termination claim and deem the issue waived.

We realize that United Capitol would likely have learned of the relevant facts had it engaged in even limited discovery. Still, a party engaging in even limited discovery faces significant costs. *See generally Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648, 654 (7th Cir. 1984). And the party filing the pleading has the easiest access to the facts which it thinks make a claim. As a result, we must diligently enforce the factual basis requirement to limit the resources that can be wasted by the parties and the courts trying to chase down facts which the pleader could have easily provided. *See id.*

■

Having ultimately concluded that United Capitol is entitled to reimbursement, we next review its cross-claim for prejudgment interest dating from the time it determined the net amount due. Whether United Capitol is entitled to prejudgment interest is a question of law. *R.S. Deering Mech. Contractors v. Livesey Co.*, 161 Wis. 2d 727, 729, 468 N.W.2d 758, 759 (Ct. App. 1991).

The record reveals that after Bartolotta's credits were set off, United Capitol fixed the amount owed at $21,413.49 on January 31, 1989. Although United Capitol motioned in October 1994 for prejudgment interest beginning on that date, the trial court refused stating concerns that Bartolotta's defense to paying reimbursement was reasonable. And since Bartolotta had reasonable grounds for believing that it did not owe

United Capitol anything, the trial court felt that it should not be assessed interest.

Nonetheless, the trial court misapplied the law. The test is whether the amount of damages is "determinable." *City of Merrill v. Wenzel Bros., Inc.*, 88 Wis. 2d 676, 697, 277 N.W.2d 799, 808 (1979). The existence of legal issues which may affect actual liability for damages have no role in the calculus. *Id.* at 698, 277 N.W.2d at 808-09. The amount that Bartolotta owed was defined down to the penny as of January 31, 1989; thus, United Capitol is entitled to prejudgment interest from that date. The trial court is directed to enter prejudgment interest dating from January 31, 1989.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.