WENDY'S INTERNATIONAL, INC., as Administrator of Wendy's International, Inc. Employee Benefit Program, Plaintiff–Appellant,

v.

Linda S. KARSKO; Michael A. Karsko; Nationwide Mutual Fire Insurance Company, Defendants–Appellees.

No. 95–3763.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1996.

Decided Sept. 4, 1996.

Algenon L. Marbley (argued and briefed), Brent C. Taggart, Vorys, Sater, Seymour & Pease, Columbus, OH, for Wendy's International, Inc.

Pamela S. Krivda, James Morgan, Hahn, Loeser and Parks, Columbus, OH, for Linda S. Karsko and Michael A. Karsko.

Michael Richard Henry (argued and briefed), Crabbe, Brown, Jones, Potts & Schmidt, Columbus, OH, for Nationwide Mutual Fire Insurance Company.

Before: MERRITT, Chief Judge; KEITH and SUHRHEINRICH, Circuit Judges.

MERRITT, Chief Judge.

Plaintiff Wendy's International appeals from the District Court's grant of summary judgment in favor of the Defendants. Wendy's brought this action on behalf of its Employee Benefit Program Plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1988). After one of its plan participants, Linda Karsko, was in an automobile accident caused by an uninsured motorist, Wendy's incurred $66,757.19 in medical expenses on Mrs. Karsko's behalf. In addition, the Nationwide insurance company paid the Karskos the full amount of their coverage under their uninsured motorist policy ($110,000), in settlement of their claim arising from the same accident. Wendy's sued both the Karskos and Nationwide to recoup its $66,757.19 in expenses, arguing that the subrogation provisions of the Plan apply to monies received from uninsured motorist coverage. Wendy's subsequently settled with the Karskos, so this case now involves only Wendy's claim against Nationwide.

The District Court held that, under the language of the relevant plan documents, Wendy's has no right to subrogation of uninsured motorist benefits. We AFFIRM, but for different reasons. We find that Wendy's has no right of action against Nationwide because, even though the subrogation clause does apply to uninsured motorist benefits, Nationwide has fulfilled its obligation by paying the Karskos. We reject the Plaintiff's suggestion that we adopt a common law doctrine with would allow them to collect further against Nationwide, because the doctrine in question applies only against tortfeasors, and Nationwide was not a tortfeasor in this case. In addition, permitting subrogation against Nationwide would violate fundamental principles of restitution or unjust enrichment law on which the doctrine of subrogation rests.

## I.

On June 2, 1992, Linda Karsko was injured in an automobile accident caused by an uninsured motorist. At the time of the accident, Ms. Karsko was an employee of Wendy's and was enrolled in their health insurance plan. As a result of the injuries she sustained in the accident, Wendy's incurred $66,757.19 in medical payments on Mrs. Karsko's behalf.

The summary plan description ("SPD") of Wendy's Plan contained the following subrogation clause:

> If you or a dependent incurs an injury or illness caused by the negligence or wrong doing of a third party, the plan will cover those medical expenses. However, if you are reimbursed or recover monies *from the person responsible for the loss,* the plan shall be reimbursed the total amount of the benefits paid by the plan, but such reimbursement shall not exceed the total proceeds of the recovery.

SPD at 12–13, Jt.App. at 174 (emphasis added). The Employee Benefit Program Plan Document (Plan Document) also contained a subrogation clause, which stated:

> With respect to benefits payable under this Plan, the Plan reserves the right to be reimbursed if a Participant or a personal representative thereof *recovers monies from a third party* or a personal representative thereof whether by judgment, settlement or otherwise, *on account of such Injury* or Illness. Reimbursement to the

Plan shall be for the total amount of benefits paid under the Plan but shall not exceed the total proceeds of the recovery. Plan Document at 55, Jt.App. at 139 (emphasis added).[1]

Mrs. Karsko also had uninsured motorist coverage through the Nationwide insurance company. As a result of this accident, Nationwide paid the Karskos the full amount of their coverage ($110,000). Wendy's concluded that the Plan's subrogation provisions apply to settlements received by participants from uninsured motorist carriers. It therefore sued the Karskos and Nationwide to recover the $66,757.19 it paid out in medical expenses.

The District Court held that Wendy's interpretation of its health insurance subrogation provision was arbitrary and capricious. First, it found that neither the SPD nor the Plan Document explicitly provide a right of subrogation when the covered person recovers monies from her own insurance company. Then, it held that " 'a responsible party ... clearly refers to a party responsible for the insured's injury and not to an insurer providing uninsured motorist coverage to the insured.' " Slip op. at 14 (quoting *Employers Health Ins. v. Gen., Casualty Co. of Wis.*, 161 Wis.2d 937, 469 N.W.2d 172, 177 (1991)). Therefore, the District Court reasoned, Wendy's conclusion that the SPD and Plan Document language reached uninsured motorist coverage is irrational. The District Court then concluded that because the Plan creates no valid subrogation interest in the proceeds of the Nationwide uninsured motorist policy, Wendy's has no right of action against Nationwide. The Karskos have since settled with Wendy's. Wendy's is pursuing its claims against Nationwide in this appeal.

## II.

■ The first issue to be addressed is whether money received by a Plan participant pursuant to an uninsured motorist policy is within the scope of the Wendy's Plan's subrogation provisions. Wendy's, as plan ad-

ministrator, found that the relevant provisions cover Nationwide's payment to the Karskos. Where an ERISA plan gives the plan administrator discretionary authority to determine benefits or construe the terms of the plan, the administrator's interpretation of Plan language is reviewed under an "arbitrary and capricious" standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989). Thus, if Wendy's interpretation of the Plan's subrogation provisions is "reasonable," it must be upheld. *Id.; Baker v. UMWA Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991). The issue is a question of law which this Court reviews *de novo*. *Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir.1989).

■ In this case, Wendy's determination that the Karskos' uninsured motorist coverage was susceptible to subrogation was based on the language contained in both the SPD and the Plan document itself. Wendy's reasoned that Nationwide was "responsible" for the Karskos' "loss" because of the liability created by the uninsured motorist policy, and thus, the recovery fell within the subrogation provision of the SPD. Similarly, Wendy's interpreted the Plan Document provision which states that,

> the Plan reserves the right to be reimbursed if a participant or a personal representative thereof recovers monies from a third party or a personal representative thereof whether by judgment, settlement or otherwise, on account of such Injury....

to reach uninsured motorist coverage, reasoning that Mrs. Karsko's received "monies" from Nationwide "on account of" the injuries she sustained in the accident is question. The District Court held that these interpretations were arbitrary and capricious. We disagree.

An insurance company such as Nationwide is a "person," and it may be "responsible" for a "loss" in the sense that it is legally obligat-

---

1. On September 16, 1992, the Karsko's signed a separate third-party reimbursement agreement. The District Court found that this agreement was simply an attempt to restate the subrogation provisions of the SPD and the Plan, and alternatively, that the agreement was unenforceable for lack of consideration. Based on our holding in this case, we need not reach these questions.

ed to the insured under certain circumstances. While this is a rather broad use of the word "responsibility," it is certainly not irrational. Had the SPD said that Wendy's had a right to monies collected only from the person who "caused" the injury, this might be a closer case, since Nationwide certainly did not "cause" the Karsko's loss. The phrase "person responsible for the loss" is much more ambiguous, however, and is therefore subject to a broader range of interpretations.

Defendants argue that this Court must look exclusively to the language contained in the SPD, citing this Court's opinion in *Edwards v. State Farm Mutual Auto. Insurance Co.*, 851 F.2d 134, 136 (6th Cir.1988). In *Edwards*, however, the SPD and Plan Document contained conflicting language. *Id.* We held that in such a case, the SPD controls. *Id.* In this case, however, the SPD and Plan document are entirely consistent. Both documents are susceptible to precisely the same interpretation. The *Edwards* case is therefore inapposite, and we may look to the Plan Document to inform our interpretation of the SPD.

The language of the Plan document is much less ambiguous than the SPD, and clearly reaches the situation in this case. Mrs. Karsko, the participant, recovered monies from a "third party ... by settlement ... on account of such injury." Thus, when the language of the Plan Document is used to inform the rather ambiguous meaning of the SPD's terms, it becomes apparent that Wendy's interpretation of its subrogation provisions was not arbitrary and capricious.

The District Court found that this case was analogous to a Wisconsin case in which the subrogation provision stated that it applied to benefits recovered "from a responsible third party." *Employers Health Ins. v. Gen. Casualty Co. of Wis.*, 161 Wis.2d 937, 469 N.W.2d 172 (1991). In *Employers Health*, the Wisconsin Supreme Court found that the subrogation clause was limited to amounts recovered by the actual wrongdoer who caused the Plan participant's injury or illness. *Id.*, 469 N.W.2d at 177. The case, however, involved the application of a "common and ordinary meaning" standard, not an

"arbitrary and capricious" standard, so it is not persuasive authority. Second, the question is not whether the SPD could reasonably be construed to limit liability to the actual wrongdoer. Rather, the question is whether the language can reasonably be construed to *include* uninsured motorist coverage. We think it can. Because Wendy's interpretation of the plan is reasonable, had Wendy's' not settled with the Karsko's, it would have a right to collect part of the monies the Karskos received from Nationwide, as reimbursement for the medical expenses it incurred on Mrs. Karskos' behalf.

The remaining claim in this case, however, is against Nationwide Insurance Company, not the Karskos. Nationwide has already fulfilled its obligation under the Karskos' policy by paying them the full amount of their coverage ($110,000). Wendy's argues that despite this, Nationwide should reimburse it further because Nationwide was aware of Wendy's subrogation right at the time it paid the Karskos.

Wendy's claim against Nationwide initially relies on 29 U.S.C. § 1132(a)(3) of ERISA, which provides that:

> A civil action may be brought ... by a participant ... (A) to enjoin any act or practice which violates any provision of ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ... the terms of the plan.

▇ Wendy's argues that Nationwide's actions violated the terms of an ERISA plan, so it is entitled to "appropriate equitable relief." Because ERISA has been held to preempt state subrogation laws, including parts of Ohio's subrogation laws, Wendy's argues that it is incumbent upon this Court to create federal common law of subrogation under ERISA to address this situation. *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Buchman v. Wayne Trace Local Sch. Dist. Bd. of Educ.*, 763 F.Supp. 1405, 1409 (N.D.Ohio 1991). Wendy's then argues that this Court should adopt the common law doctrine that a "third party with notice of a subrogation interest may not release its liability to the subrogee by settling with the subrogor."

Plaintiff's Brief at 25. In support of this argument, Wendy's cites to a number of state law cases and to 16 COUCH ON INSURANCE, 2d (Revised ed.) §§ 61:201–202. The adoption of this doctrine would, according to Wendy's, permit them to proceed against Nationwide even though the Karskos had settled the case with them for the full amount of the policy, if it is shown that Nationwide knew of Wendy's subrogation interest and settled with the Karskos anyway.

It is clear that this Court has the power to adopt federal common law rules under ERISA. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1297 (6th Cir.1991). What Wendy's overlooks, however, is that the common law principle upon which it wishes to rely does not apply to the facts of this case. The doctrine upon which they seek to rely is contained in the section of COUCH ON INSURANCE entitled "Release of *Tortfeasor* and Effect Thereof." 16 COUCH ON INSURANCE § 61:191 (emphasis added). The treatise goes on to explain that, "it is generally held that where the tortfeasor obtains a release from the insured with the knowledge that the latter has already been indemnified by the insurer, such release of the tortfeasor does not bar the right of subrogation of the insurer." *Id.* at § 61:201. Similarly, the cases cited by the Plaintiffs which apply this rule all involve actions against tortfeasors or the tortfeasors' insurance companies. *See, e.g., Hartford Accident and Indem. Co. v. Elliott,* 32 Ohio App.2d 281, 290 N.E.2d 919 (1972); *Motorists Mut. Ins. Co. v. Gerson,* 113 Ohio App. 321, 177 N.E.2d 790 (1960); *Dubose v. Lowe,* 189 N.E.2d 923 (Ohio Mun.1963).

■ Nationwide, however, was not the "tortfeasor" in this case. The uninsured motorist was. The rule to which Wendy's points does not apply to innocent third parties. The doctrine was created to prevent wrongdoers from shirking their liability by settling with a subrogor, thereby successfully avoiding obligations to a subrogee. *See Leader Nat'l Ins. Co. v. Torres,* 51 Wash. App. 136, 751 P.2d 1252 (1988), *aff'd,* 113 Wash.2d 366, 779 P.2d 722 (1989). In this case, Nationwide has paid the Karskos the full amount owed to them under the policy, $110,000. They have done nothing to evade liability. No principle of common law or equity exists which would require them to incur further liability for this accident.

More fundamentally, both the RESTATEMENT OF RESTITUTION and Palmer's treatise LAW OF RESTITUTION support affirmance of the summary judgment motion in this case. For example, the Restatement defines the right of subrogation to apply, "[w]here property of one person is used in discharging an obligation owed by another ... under such circumstances that the other would be *unjustly enriched* by the retention of the benefit thus conferred...." RESTATEMENT OF RESTITUTION § 162 (1937). Similarly, Palmer's treatise on restitution indicates that, "[t]he only justification for such a judgment is to prevent the *unjust enrichment* of the insured." PALMER, LAW OF RESTITUTION § 23.1 (1978). The equitable doctrine of subrogation would thus apply to Wendy's action against the Karsko's, but not their claim against Nationwide, as Nationwide has not been unjustly enriched in any way.

### III.

For these reasons, the District Court's grant of Defendants' motion for summary judgment is hereby AFFIRMED.