Affirmed and Majority and Concurring Opinions filed July 7, 2009








Affirmed and Majority and Concurring Opinions filed July 7, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00663-CV

_______________

 

THE METHODIST HOSPITAL, Appellant

 

V.

 

ZURICH AMERICAN INSURANCE COMPANY, TAMERA McKINNEY,
AND MARY VU, Appellees

                                                                                                                                               


On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2006-60720

                                                                                                                                               


 

M A J O R I T Y    O P I N I O N

Appellant,
The Methodist Hospital (AMethodist@), sued appellees, Zurich American Insurance Company (AZurich@), Tamera McKinney, and Mary Vu,
asserting various causes of action based on appellees= allegedly improper handling and
payment of workers= compensation claims filed by two Methodist employees.  In a
single issue encompassing several  arguments, Methodist contends the trial
court erred by granting summary judgment on Methodist=s (1) breach-of-contract action
against Zurich, (2) negligence action against all appellees, and (3)
breach-of-express-warranty action against Zurich.  We affirm. 








I.  Background

Zurich
issued workers= compensation insurance policies (Athe policy@) to Methodist for various successive
periods.[1]  Workers= compensation claims were subject to
a $1 million deductible per each accident.  The parties executed a document
entitled ADeductible Agreement,@ which outlined Athe scope, description and structure@ of the ADeductible Program@ and Athe duties and obligations of each
party with respect to this Program.@  The Deductible Agreement consisted
of the ATerms and Conditions@ outlined therein and separate
documents entitled ASpecifications to Deductible Agreement@ executed by the parties.

We will
later discuss in more detail pertinent provisions of the Deductible Agreement. 
However, in general, Zurich agreed to handle and pay workers= compensation claims and then bill
Methodist for payments within the deductible.  Methodist agreed to remit all
such amounts when due.  To accomplish this billing and remittance, Methodist
deposited a certain amount into an escrow fund and Zurich initiated a weekly
electronic transfer from the fund to obtain payment for losses adjusted within
the deductible.

Judith
Riegert and Ana Fulton-Perez, Methodist employees, were injured during two
applicable policy periods.  Both employees filed workers= compensation claims.  Vu was the
Zurich adjuster who handled these claims, and McKinney was Vu=s supervisor.  The total benefits
paid for each claim were within the $1 million deductible.     








Methodist
eventually sued Zurich, McKenney, and Vu.  In its live petition, Methodist
pleaded (1) breach of contract against Zurich only, (2) negligence against all
appellees, (3) breach of express warranty against Zurich only, and (4) a
request for declaratory judgment. Methodist alleged Zurich, McKenney, and Vu
improperly handled the Riegert and Fulton-Perez claims.  Methodist alleged portions
of the claimed injuries were not compensable because of pre-existing
conditions, but appellees failed to dispute compensability within the deadline
prescribed by the Texas Workers= Compensation Act (Athe act@) and improperly approved payment of
these benefits .  Because the amounts paid for each claim were within the $1
million deductible, Methodist contended it sustained damages as a direct
consequence of Zurich=s allegedly improper payments.

Zurich
filed a traditional and no-evidence motion for summary judgment on Methodist=s claim for breach of express warranty. 
On July 27, 2007, the trial court signed an order granting the motion and
ruling that Methodist take nothing on this cause of action.

Appellees
filed a traditional motion for partial summary judgment on the negligence and
breach-of-contract actions.  On September 20, 2007, the trial court signed an AAmended Order Granting Final Summary
Judgment, Partial Dismissal Without Prejudice, and Dismissal Without Prejudice
of Defendants= Counterclaims,@ ruling that Methodist take nothing on its (1)
breach-of-contract action against Zurich and (2) negligence action against all
appellees.[2]  The court
further stated the order disposed of all claims and was final and appealable.[3]

II.  Traditional Summary
Judgment on 

Breach-of-Contract and
Negligence Actions

A party
moving for traditional summary judgment must establish no genuine issue of
material fact exists and it is entitled to judgment as a matter of law.  See
Tex. R. Civ. P. 166a(c);  Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215B16 (Tex. 2003).  A defendant moving for summary judgment must
conclusively negate at least one element of the plaintiff=s theory of recovery or plead and
conclusively establish each element of an affirmative defense.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  If the defendant
establishes its right to summary judgment, the burden shifts to the plaintiff
to raise a genuine issue of material fact.  Id.  We review a summary
judgment de novo.  Knott, 128 S.W.3d at 215.  We take all evidence
favorable to the nonmovant as true and indulge every reasonable inference and
resolve any doubts in favor of the nonmovant.  Id.

A.        Appellees= Summary-Judgment Grounds

Appellees
presented separate grounds for summary judgment on the breach-of-contract and
negligence actions but relied on the same case to support both grounds.  To
understand the parties= positions, it is helpful to first explain both grounds and
Methodist=s general response.[4] 

1.         Breach of Contract








In its
live petition, Methodist alleged Zurich breached the parties= contract by failing to timely
contest compensability of the Riegert and Fulton-Perez injuries and paying
claims that were invalid because of pre-existing conditions.[5] 
Specifically, Methodist asserted Zurich breached the Aduty to defend@ set forth in the policy.  Methodist
also asserted Zurich breached the Deductible Agreement; Methodist did not
specify a particular provision of this agreement allegedly violated but seemed
to allege Zurich breached a general contractual obligation to properly handle
claims.

Zurich
moved for summary judgment on the ground that the policy gave Zurich complete
discretion in handling and paying workers= compensation claims; consequently,
its decisions to pay the claims at issue were not actionable in breach of
contract.  In particular, Zurich cited the following portion of the policy:

B.        We Will Pay

We will
pay promptly when due the benefits required of you by the workers= compensation law.

C.        We Will Defend

We have
the right and duty to defend at our expense any claim, proceeding or suit
against you for benefits payable by this insurance.  We have the right to
investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit
that is not covered by this insurance.








Zurich
also relied on Wayne Duddlesten, Inc. v. Highland Insurance Co., 110
S.W.3d 85 (Tex. App.CHouston [1st Dist.] 2003, pet. denied).  In Duddlesten,
the employer=s workers= compensation policies included a retrospective premium
payment plan, under which the standard annual premium would be adjusted based
on amounts the insurer had paid for claims under the policy.  Id. at 88B89.  The insured sued the carrier,
alleging it improperly paid several workers= compensation claims that were not
covered under the policy.  Id. at 89B90.  The court of appeals affirmed
summary judgment in favor of the insurer on several causes of action, including
breach of contract.  Id. at 88.

The
insured maintained the policy obligated the insurer to properly investigate and
adjust claims and pay only valid claims.  Id. at 89B90.  The policy contained identical
language to the above-cited provisions in Methodist=s policy.  Id.  The court of
appeals relied on the language of Paragraph C., giving the insurer the Aright to investigate and settle . . .
claims[,] proceedings or suits@ against the insured Afor benefits payable by this
insurance.@  Id. at 90.  The court stated the policy contained no requirement
that the insurer obtain the insured=s consent when settling or
investigating the merits of a claim and the court was not permitted to write
such a clause into the policy.  Id.  (citing Dear v. Scottsdale Ins.
Co., 947 S.W.2d 908, 913B14 (Tex. App.CDallas 1997, pet. denied), overruled on other grounds by
Apex Towing Co. v. Tolin, 41 S.W.3d 118, 122B23 (Tex. 2001), which held that, when
policy gives absolute right to settle third‑party claims, courts are not
permitted to Aengraft any consent requirement onto [the] policy@).  








The
court recognized a separate issue was presented on whether the insurer owed
extra-contractual duties to prudently investigate and settle claims.  Id. 
However, because the policy gave the insurer the right to settle claims, its
discretion in investigating and paying claims was not contractually limited.  Id. 
Consequently, the court held the insured had no breach of contract action
against the insurer as a matter of law.  See id. at 89B90; see also Dear, 947 S.W.2d
at 913B15 (holding insured relinquished
right to sue general liability insurer for breach of contract relative to
insurer=s allegedly improper handling and
payment of third-party claim by purchasing policy which gave insurer right to
settle).  Zurich contended that, likewise, Methodist=s breach-of-contract action was
precluded because the policy gave Zurich the right to investigate and settle
the claims at issue.

2.         Negligence

In its
live petition, Methodist alleged Zurich, McKenney, and Vu breached a purported
duty to exercise ordinary care when handling the Riegert and Fulton-Perez
claims.  Appellees moved for summary judgment on the ground that Texas law has
not recognized a cause of action by an insured for its insurer=s negligent handling of an insurance
claim in any context other than Stowers.  See G.A. Stowers Furniture
Co. v. Am. Indem. Co., 15 S.W.2d 544, 547 (Tex. Comm=n App. 1929, holding approved)
(recognizing, generally a liability insurer may be liable in tort for failing
to accept a reasonable settlement demand within policy limits).

Appellees
again relied on Duddlesten, in which the insured also alleged the
insurer  was negligent in handling and paying the claims at issue.  110 S.W.3d
at 96B7.  The court of appeals affirmed the
trial court=s granting special exceptions and striking the insured=s pleadings relative to its
negligence cause of action.  Id.  The court stated it was unaware of any
authority from the Texas Supreme Court expressly permitting a plaintiff to sue
an insurer for negligent claims-handling outside the scope of Stowers.  Id.
at 97.  A>Texas law recognizes only one tort
duty in this context, that being the duty stated in Stowers . . .=@ Id. (quoting Md. Ins. Co.
v. Head Indus. Coatings and Servs., 938 S.W.2d 27, 28 (Tex. 1996); and
citing Ford v. Cimarron Ins. Co., 230 F.3d 828, 832B33 (5th Cir. 2000), in which court
stated Texas law does not recognize negligence cause of action for insurer=s handling, investigation, and
settling of claim against insured and AStowers provides the only common law tort
duty in Texas in that setting@).[6]








Unlike a
Stowers scenario, the Duddleston insured did not allege the
insurer negligently failed to settle a claim when there was an offer within
policy limits; rather, the insured complained the insurer was negligent by
settling an invalid claim.  Id.  The court was unwilling to expand the
scope of an insurer=s duties to the insured absent express authorization from the
Texas Supreme Court to do so.  Id.  Appellees contend that, likewise, Zurich
owed no duty of ordinary care to Methodist when handling and paying the claims
at issue.[7]

B.        Methodist=s Contentions








Methodist
challenges summary judgment on the breach-of-contract and negligence actions
collectively.  Methodist=s overarching argument on both grounds is Duddlesten
does not control because the workers= compensation claim therein was
wholly payable by the insurer; see generally 110 S.W.3d 85; in
contrast, the present case involves payment of claims within Methodist=s $1 million deductible.  Methodist
contends that, unlike the Duddlesten scenario, the relationship between
Methodist and Zurich was not insured/insurer for payment of claims within the
deductible; rather, Methodist was self-insured for these claims and Zurich
acted solely as Methodist=s claims-handling agent.  Methodist urges that, by virtue of
this relationship, Zurich owed contractual and extra-contractual duties to
properly handle these claims.  Methodist also emphasizes that Zurich, when
adjusting and paying claims within the deductible, was effectively spending
Methodist=s money because it was entitled to automatic reimbursement from Methodist=s escrow fund.[8]

We
construe Methodist=s contention regarding the parties= purported relationship of
self-insured/claims-handling-agent as more applicable to the negligence action;
the Duddlesten court relied on the parties= status when holding the insurer
owed no extra-contractual duties to its insured.  See id.
at 97.  The Duddlesten court relied on the actual policy language giving
the insurer discretion to settle claimsCnot the parties= relationshipCto negate that the insurer owed
contractual duties to the insured. See id. at 89B90.          

Nevertheless,
Methodist apparently posits that the parties= relationship also imposed general
contractual duties on Zurich to properly handle claims within the deductible. 
Alternatively, Methodist does advance the following argument that is directed
solely toward the breach-of-contract ground and involves construction of the
contract: Duddlesten is inapplicable because (1) Zurich failed to
establish its actual policy language gave it discretion when handling and
paying claims within the deductible and (2) unlike the present case, Duddlesten
did not involve an allegation of breach of the duty to defend.








We will
first evaluate Methodist=s challenge to summary judgment on the negligence action
because this issue primarily encompasses the contention regarding the parties= relationship, followed by summary
judgment on the breach-of-contract action.  Finally, we will discuss Methodist=s general argument that Zurich owed
contractual and extra-contractual duties when handling and paying claims within
the deductible because it was spending Methodist=s money.

C.        Analysis -
Negligence

Methodist
contends Duddlesten is inapplicable to its negligence action because
Zurich owed Methodist all duties in handling claims within the deductible that
are owed by any agent to its principal, including the duty to perform the
parties= contract with care.[9]


Methodist
relies on Chapter 2053, Subchapter E of the Texas Insurance Code, which governs
AOptional Deductible Plans@ for workers= compensation insurance.  See
Tex. Ins. Code Ann. '' 2053.201B.06 (Vernon 2009).  Section 2053.202 provides:

(a)  The department shall require each insurance company writing
workers= compensation insurance in this state to offer at
least three optional deductible plans adopted under this section that allow a
policyholder to self‑insure for the amount of the deductible.

(b) The commissioner by rule shall allow an employer to enter into an
agreement with an insurer for a negotiated deductible that exceeds the highest
deductible available under a plan described by Subsection (a). 

Id. ' 2053.202.  

Section
2053.203 then outlines the method for payment of claims and reimbursement under
an optional deductible plan:








(a) An insurance company issuing a deductible policy under this
subchapter shall service all claims that arise during the policy period,
including those claims payable, wholly or partly, from the deductible amount.

(b) A deductible policy must provide that:

(1) the
insurance company issuing the policy shall pay all benefits that are payable
from the deductible amount; and

(2) the
policyholder shall make reimbursements periodically, rather than at the time
claim costs are incurred.

(c) The commissioner shall adopt rules to provide for adequate security
for reimbursement of the amount paid by an insurance company that is payable
from the deductible amount.

Id. ' 2053.203.

Methodist
suggests its Deductible Agreement  was a deductible plan as contemplated under
these provisions; thus, Methodist was self-insured for the deductible and
Zurich was merely its claims-handling agent or claims contractor.








Zurich
argues the Deductible Agreement was not a deductible plan under these
provisions.  Zurich asserts the parties= contract demonstrates Methodist was
solely Zurich=s insured with a high deductibleCnot self-insured.  Further, Zurich
emphasizes it is undisputed Methodist was not certified as required for a
private, individual employer to be self-insured under the workers= compensation act.[10] 
See Tex. Lab. Code Ann. ' 407.041 (Vernon 2006) (providing that such an employer who
desires to self-insure must obtain a certificate of authority); Tex. Lab. Code
Ann. ' 401.011(6) (Vernon Supp. 2008)
(defining ACertified self-insurer@ to mean Aa private employer granted a certificate of authority to
self-insure, as authorized by [the act], for the payment of compensation@); Tex. Lab. Code Ann. ' 401.011(27) (defining Ainsurance carrier@ to mean A(A) an insurance company; (B) a
certified self‑insurer for workers= compensation insurance; (C) a
certified self‑insurance group under Chapter 407A; or (D) a governmental
entity that self‑insures, either individually or collectively@).  Zurich asserts that a private,
individual employer either purchases workers= compensation insurance, obtains
certification to self-insure, or is considered a non-subscriber.  See
Tex. Lab. Code Ann. ' 406.003 (Vernon 2006) (providing, Aan employer may obtain workers= compensation coverage through a
licensed insurance company or through self-insurance as provided by this [act].@). Therefore, according to Zurich,
section 2053.202 merely provides that a carrier must offer deductible
plans, which allow an employer, who is certified, to choose to self-insure for
the deductible amount, but Methodist=s Deductible Agreement was not such a
plan. 

 Methodist
asserts there is no requirement under section 2053.202 that an employer be
certified to purchase a deductible plan outlined therein.  See Tex. Ins.
Code Ann. ' 2053.202. The gist of Methodist=s argument is that every agreement
governing reimbursement of a deductible is an optional deductible plan
contemplated by section 2053.202; thus, Aevery employer holding a deductible
reimbursement workers= compensation policy is self-insured for the amount of the
deductible.@

We need
not decide whether an employer must be certified as a self-insurer to purchase
an optional deductible plan under section 2053.202 because we conclude the
Deductible Agreement in this case was not such a plan.  We recognize the
Deductible Agreement operated somewhat like a plan under section 2053.202
because Zurich was required to service and pay claims before obtaining periodic
reimbursement from Methodist and an escrow fund was established to provide
adequate security for reimbursement.  See id. '' 2053.202, .203.  However, section
2053.202 does not provide that every deductible-reimbursement agreement is
automatically a plan outlined in the statute.  See id. ' 2053.202.  As we construe the
statute, it merely provides there exist plans that allow the employer to self
insure and a carrier must offer these plans as an option.  See id.








In this
case, the Deductible Agreement indicated it was not such a plan and Zurich was
Methodist=s insurer with respect to claims within the deductible.  The terms, Aself-insured,@ Aself-insurance,@ or Aself-insurance retention@ were never mentioned in the
Deductible Agreement.  There was no provision stating the insurance coverage
did not begin until the $1 million layer was exhausted.  Further, nothing in
the Deductible Agreement gave it the character of solely a claims-handling
agreement divorced from the terms of the insurance policy for claims within the
deductible.

Rather,
the Deductible Agreement expressed that it was interrelated with the policy:  AThe Program has two primary,
independent components: (1) the insurance coverage provided under the
Polic(ies); and (2) the cash flow benefits achieved through the financing
arrangement under the Program.@ (emphasis added).  Moreover, the Deductible Agreement
explicitly provided that Zurich would Ahandle and pay the claims presented in
accordance with the provisions of the Policy(ies). . . and bill [Methodist]
for the claim payments within the Deductible Amount(s) . . . as stated in the
Specifications.@  (emphasis added).








In sum,
because section 2053.202 does not provide that every agreement concerning
reimbursement of a deductible is a plan governed by the statute and the
Deductible Agreement does not indicate Methodist was self-insured, we decline
to hold the Deductible Agreement was such a plan.  We conclude the relationship
between Methodist and Zurich was insured/insurer with respect to claims within
the deductible.[11] 
Accordingly, Texas law negates Methodist=s contention that Zurich owed a duty
to perform with care.[12]  We decline
to acknowledge a duty with respect to handling and paying claims within the
deductible that has not been recognized under Texas law.[13]

D.        Analysis -
Breach of Contract

As we
have explained, although its position is not exactly clear, Methodist
apparently suggests the parties= purported relationship of self-insured/claims-handling-agent
also imposed contractual duties on Zurich to properly handle and pay claims
within the deductible. Because we have rejected Methodist=s contention regarding the parties= relationship, we also reject this
suggestion. 








Moreover,
regardless of how the parties= relationship is characterized, like the Duddlesten
court, we must consider the terms of their contract when evaluating the
contractual duties owed by Zurich to Methodist and enforce it as written.  See
Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342,
345 (Tex. 2006) (stating court=s primary concern when interpreting contract is to ascertain
and give effect to intent of parties as expressed in the contract); Royal
Indem. Co. v. Marshall, 388 S.W.2d 176, 181 (Tex. 1965) (recognizing court
must enforce unambiguous contract according to its terms); see also Nat=l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d
517, 520 (Tex. 1994) (stating interpretation of insurance policy is governed by
same rules of construction applicable to other contracts).  Consequently, we
will address Methodist=s alternative arguments that involve construction of the
parties= contract.

1.         Discretion When
Investigating and Paying Claims Within Deductible 

 First,
Methodist contends Duddlesten is inapplicable because Zurich failed to
establish the policy language granting it discretion when investigating and
paying claims extended to those within the deductible.  As Methodist asserts,
the policy provision granting Zurich the Aright to investigate and settle these
claims, proceedings or suits@ referred to Aany claim, proceeding or suit against [Methodist] for benefits
payable by this insurance.@ (emphasis added).  Methodist argues (1) the emphasized
language demonstrated Zurich had the right to settle only claims for which it
was ultimately responsible or (2) based on existence of the deductible, there
was a latent ambiguity on whether Zurich had the right to settle all claims or
only those for which it was ultimately responsible.  See CBI Indus., Inc.,
907 S.W.2d at 520 (recognizing latent ambiguity arises when contract
unambiguous on its face is applied to subject matter with which it deals and
ambiguity appears by reason of some collateral matter).  We disagree with both
contentions.








Because
the Deductible Agreement governed the deductible program and was interrelated
with the policy, we must construe these writings together when determining the
parties= contractual duties relative to
claims within the deductible.  See Seagull Energy E & P, Inc., 207
S.W.3d at 345 (stating that court, when interpreting contact, must examine and
consider entire writing in an effort to harmonize and give effect to all
provisions so none will be rendered meaningless;  no single provision will be
given controlling effect, but rather, all provisions must be considered with
reference to the whole instrument).[14] 

Significantly,
as we have mentioned, the Deductible Agreement provided Zurich would Ahandle and pay the claims presented in
accordance with the provisions of the Policy(ies) and bill [Methodist] for
the claim payments within the Deductible Amount(s) . . . as stated in the
Specifications.@  (emphasis added).  The Deductible Agreement did not
prescribe any special rules applicable to handling or paying claims within the
deductible.  Specifically, there was no provision modifying Zurich=s Aright to investigate and settle the
claims, proceedings or suits@ relative to benefits within the deductible or otherwise
requiring Methodist=s consent to pay such claims.  The Deductible Agreement
simply required Zurich to handle and pay these claims before obtaining
reimbursement from Methodist under the methods for billing and remittance
outlined therein.  Accordingly, construing the entire contract, we conclude the
provision in the policy granting Zurich the discretion to settle Aany claim, proceeding or suit@ against Methodist Afor benefits payable by this
insurance@ encompassed all claims for workers= compensation benefits, including
those within the deductible.

2.         Applicability of Duddlesten
to Action for Breach of Duty to Defend

Methodist
also contends Duddlesten is not controlling because, unlike the present
case, it did not involve an allegation of breach of the duty to defend. As
Methodist asserts, both the Duddlesten insured and Methodist contended
the insurer had a contractual obligation to pay only valid claims, but they
relied on different policy language.








The Duddlesten
insured argued the insurer=s obligation derived from Paragraph B. of the pertinent
policy provisions, which stated the insurer Awill pay . . . benefits required of
you by the Workers= Compensation law.@  110 S.W.3d at 90.  However, the
court reasoned the insurer=s actions taken pursuant to Paragraph C., which gave it the Aright to investigate and settle these
claims[,] proceedings or suits,@ determined whether it was required to pay benefits pursuant
to Paragraph B.; i.e., if the insurer exercised its right to settle a claim
under Paragraph C., payment was required of the insurer under Paragraph B.  Id.

Methodist
relies on Paragraph C. providing, A We have the . . . duty to defend at
our expense any claim, proceeding or suit against you for benefits payable by
this insurance.@  As Methodist asserts, the Duddlesten court did
state, AAppellant does not argue that
appellees failed to defend it from any suits or claims against it, but rather,
appellees did not properly investigate and adjust the claims according to its
duties under the policy.@  110 S.W.3d at 90. However, the court did not suggest its
conclusion would be different if the employer had asserted the insurer=s payment of an invalid claim
constituted breach of the duty to defend.  See id. at 89B90.  Rather, the court=s statement could be interpreted as
suggesting the employer=s allegation did not equate to a contention the insurer
breached the duty to defend. At most, the court did not expressly address
whether an insured would have a viable cause of action if it alleged an insurer=s payment of an invalid claim
violated the duty to defend.  See id.  We conclude the provision
giving the insurer the right to settle negates existence of a contractual
obligation to pay only valid claims, regardless of the different policy
provisions cited by the Duddlesten insured and Methodist.








Under
its plain meaning, the Aduty to defend . . . any claim . . . for benefits payable by
this insurance@ merely imposed an obligation on Zurich to assume responsibility for
handling a claim when benefits are payable under workers= compensation law.  See Burlington
Ins. Co. v. Tex. Krishnas, Inc., 143 S.W.3d 226, 229 (Tex. App.CEastland 2004, no pet.) (recognizing,
in context of general liability policy, if petition contains allegations which,
when fairly and reasonably construed, state cause of action potentially covered
by policy, insurer has duty to defend insured in underlying suit).  Methodist
does not allege Zurich refused to handle and pay claims for compensable
injuries.  Rather, Methodist alleges Zurich paid claims for injuries that were not
compensable. 

A
federal court applying Texas law has considered a similar issue, albeit in an
unpublished opinion. The insured sued his general liability insurer alleging,
among other theories, breach of contract for settling a third-party claim that
the insured considered Autterly frivolous@ and Acompletely defensible.@  Kreit v. St. Paul Fire &
Marine Ins. Co., No. CIV.A.H-04-1600, 2006 WL 322587, at *1 (S.D. Tex. Feb
10, 2006).  The policy required the insurer to defend any suit for damages
covered under the policy and vested the insurer with the right to investigate,
negotiate, and settle any suit as it deemed appropriate.  Id.  The
insured contended the insurer breached the policy by Anot really defending@ the suit.  Id.  at *4.  When
granting summary judgment for the insurer, the court cited the provision
unambiguously allowing the insurer to settle the suit and rejected the
suggestion its obligation to provide a defense meant it was required to take
the suit to trial.  Id. at *5.

Likewise,
we reject Methodist=s suggestion that the duty to defend required Zurich to
dispute payment for any benefits that might not be due under workers= compensation law.  This interpretation
would render meaningless the provision immediately following that gave Zurich
the right to settle claims.  Accordingly, the duty-to-defend provision did not
impose an obligation to pay only valid claims.[15]









E.        General
Contention Zurich Owed Duties When Spending Methodist=s Money

Finally,
Methodist urges Zurich owed contractual and extra-contractual duties to
properly handle and pay claims within the deductible because it was effectively
spending Methodist=s money.  This argument was apparently interwoven with
Methodist=s other contentions, which we have rejected.  Nonetheless, to the extent
Methodist suggests that, despite the right-to-settle provision negating any
such contractual duty and lack of Texas authority imposing an extra-contractual
duty, Methodist should have legal recourse because the money Acame from [its] pocket,@ we disagree.

Notably,
the Duddlesten insured argued the insurer should be liable for negligent
claims handling because it had less incentive to dispute invalid claims when it
would be reimbursed by the insured pursuant to the retrospective premium
payment plan.  110 S.W.3d at 97.  The court specifically rejected this argument
relative to the insured=s negligence actionCnot breach-of-contract.  See id.
at 89B90, 97.  But, obviously, this
argument did not sway the court when rejecting both causes of action as a
matter of law.  See id. at 89B90.  We acknowledge a retrospective
premium payment plan is not the same as a deductible.  Nevertheless, the fact
the insured might incur financial loss if the insurer paid an invalid claim did
not persuade the court to disregard the right-to-settle provision or impose an
extra-contractual duty not recognized under Texas law.  See id.
at 97; see also Dear, 947 S.W.2d at 912, 913B15 (holding insured had no viable
breach-of-contract or negligence theories of recovery for liability insurer=s improper handling and settlement of
third-party claim, although he complained its actions caused him loss of
business and increased costs for professional liability insurance, because he
was bound by terms of policy he purchased, including provision vesting insurer
with right to settle any claim).








In fact,
a Texas court has addressed, albeit in an unpublished opinion, an insured=s complaint its general liability
insurer improperly investigated and settled a suit for an amount that invoked
the insured=s high deductible, despite its disapproval.  Stevens Transport, Inc.
v. Nat=l Cont=l Ins. Co., No. 05-98-00244-CV, 2000 WL 567225
(Tex. App.CDallas May 11, 2000, no pet.) (not designated for publication).  In
affirming a directed verdict for the insurer on all causes of action, including
breach of contract and negligence, the court of appeals relied on the policy
provision unambiguously vesting the insurer with an absolute right to settle
third-party claims based on its own discretion.  Id. at *3.  The court
stated, A[b]y purchasing an insurance policy
that did not give [the insured] the right to reject a settlement of third party
claims, [it] gave up the right to complain that the settlement caused it
damages@ and Amere presence of the large deductible
does not change the result.@  Id. (emphasis added).








Additionally,
courts in several other jurisdictions have reached the same conclusion when
addressing an insured=s refusal to reimburse its general liability insurer for a
deductible or retention because a claim was settled over the insured=s objection; the courts rejected the
insured=s suggestion that a right-to-settle
provision should not be enforced solely because the insured=s funds were at stake, reasoning the
insured was bound by its contract.  See Am. Prot. Ins. Co. v. Airborne, Inc.,
476 F. Supp. 2d 985, 987, 990B92 (N.D. Ill. 2007) (applying Illinois law and holding
insured cannot complain right-to-settle provision inevitably allows insurer to
commit insured=s funds without its consent because Athat is exactly the bargain that the
insured struck under the policy that it bought and paid for@); United Capitol Ins. Co. v.
Bartolotta=s Fireworks Co., Inc., 546 N.W.2d 198, 199B202 (Wis. Ct. App. 1996) (rejecting
insured=s suggestion ASelf Insured Retention Endorsement@ somehow separated single policy into
two, leaving insured with authority over claims within the deductible and
insurer with power over remainder and that it was in unfair position and
subject to exploitation by insurer because, among other reasons, Ainsureds who are burned by one
insurance company may find refuge in the marketplace by seeking coverage from
another insurer@); Am. Home Assurance Co. v. Hermann=s Warehouse Corp., 563 A.2d 444, 448 (N.J. 1989)
(recognizing, insured has Abargained away whatever rights might otherwise be created by@ inherent conflict between insured
and insurer when policy contains deductible and right-to-settle clause,
contours of the arrangement are negotiable in commercial setting, and insured
is not foreclosed from obtaining coverage with no deductible if it wishes to
pay for such additional consideration).[16]

We find Stevens
Transport and these decisions from other jurisdictions persuasive in the
present case because Texas has a Astrong commitment to the principle of
contractual freedom@ and its Aindispensable partner‑‑contract enforcement.@  See Churchill Forge, Inc.
v. Brown, 61 S.W.3d 368, 371 (Tex. 2001);  In re Wells Fargo Bank Minn.,
N.A., 115 S.W.3d 600, 607 (Tex. App.CHouston [14th Dist.] 2003, orig. proceeding
[mand. denied]); see also Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 162 (Tex. 2003) (Awe may neither rewrite the parties= contract nor add to its language.@).  In short, Methodist seeks to
impose contractual and extra-contractual duties that are contrary to the terms
of the contract for which it bargained.[17]









We also
acknowledge the above-cited decisions involved general liability policiesCnot specifically workers= compensation policies. 
Nevertheless, their reasoning is even more compelling in the workers= compensation setting.  In
particular, the act prohibits an employer, other than a certified self-insured,
from exercising control over claims handling and settlement.  See Tex.
Lab. Code Ann. ' 415.002(a)(6) (Vernon 2006) (stating an insurance carrier,
or its representative, commits an administrative violation if it Aallows an employer, other than a self‑insured
employer, to dictate the methods by which and the terms on which a claim is
handled and settled@).  Because Methodist was not a certified self-insured, we
have no option but to enforce the provision giving Zurich discretion to settle
claims within the deductible.  Methodist argues it did not seek to exercise
discretion but only insisted that Zurich act reasonably.  However, if Zurich
had adjusted a claim knowing that, after the fact, it may be required to
account to Methodist for the reasonableness of its decisions, Methodist would
have indirectly influenced handling and settlement of the claim.

Finally,
we reject Methodist=s suggestion it should have recourse because  Zurich bore no
risk when handling Methodist=s funds.  To the contrary, along with its discretion in
handling claims, Zurich, as insurance carrier, was the party who faced
potential liability to the employee with respect to claims-handling.  See
Aranda v. Ins. Co. of N. Am., 748 S.W.2d 210, 211B12 (Tex. 1988) (recognizing workers= compensation insurance carrier owes
employee duty of good faith and fair dealing in processing compensation
claims).  Methodist certainly does not admit it was personally liable to its
employees for the manner in which claims were handled.  Consequently, we
decline to approve a scenario in which Methodist indirectly retained discretion
over Zurich=s handling and settlement of claims, yet Zurich, not Methodist, was
potentially liable to an employee for claims-related decisions.

In sum,
the trial court properly concluded that, as a matter of law, Methodist had no
cause of action for breach of contract or negligence against Zurich.








III.  Summary Judgment On
Cause of Action 

for Breach of Express
Warranty

Zurich=s motion for summary judgment on the
breach-of-express-warranty action included both traditional and no-evidence
grounds.  When, as in this case, the trial court does not specify in the order
the grounds relied on in granting summary judgment, we must affirm the summary
judgment if any of the grounds presented are meritorious.  W. Invs., Inc. v.
Urena, 162 S.W.3d 547, 550 (Tex. 2005);  Pico v. Capriccio Italian Rest.,
209 S.W.3d 902, 905 (Tex. App.CHouston [14th Dist.] 2006, no pet.).  We conclude the trial
court properly granted the no-evidence motion.

After
adequate time for discovery, a party may move for summary judgment on the
ground that there is no evidence of one or more essential elements of a claim
or defense on which an adverse party would have the burden of proof at trial. 
Tex. R. Civ. P. 166a(i); Urena, 162 S.W.3d at 550; Pico, 209
S.W.3d at 905.  Unless the respondent produces summary-judgment evidence
raising a genuine issue of material fact, the trial court must grant the
motion.  Tex. R. Civ. P. 166a(i); Urena, 162 S.W.3d at 550;  Pico,
209 S.W.3d at 905.  To defeat a no‑evidence motion for summary judgment,
the non-movant need not marshal its evidence, but must point out in its
response evidence raising a genuine issue of fact as to the challenged
elements.  See Tex. R. Civ. P. 166a(i) cmt.; Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002); Pico, 209 S.W.3d at
912.








The
parties disagree on all elements of a claim for breach of express warranty for
services, but they agree the plaintiff must prove at least the following: the
defendant sold services to the plaintiff; the defendant made a representation
to the plaintiff about the characteristics of the services by affirmation of
fact, promise, or description; the representation became part of the basis of
the bargain; the defendant breached the warranty; and the plaintiff suffered
injury.  See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc., 227
S.W.3d 876, 886 (Tex. App.CDallas 2007, no pet.) (citing Sw. Bell Tel. Co. v. FDP
Corp., 811 S.W.2d 572, 576B77 & n.3 (Tex. 1991); Mills v. Pate, 225 S.W.3d
277, 289B90 (Tex. App.CEl Paso 2006, no pet.); Great Am.
Prods. v. Permabond Int=l, 94 S.W.3d 675, 681 (Tex. App.CAustin 2002, pet. denied)).[18]

In
earlier petitions, Methodist set forth a very general breach-of-warranty claim.
Pursuant to the trial court=s order, Methodist filed a pleading entitled, A[Methodist=s] Basis For Its Breach of Warranty
Claims@ (hereinafter Athe warranty filing@), in which Methodist supplemented
previous discovery responses to outline the basis for its cause of action. 
Subsequently, in its live pleading, Methodist more specifically outlined the
basis of its action. In the warranty filing and live petition collectively,
Methodist identified two categories of express warranties allegedly breached by
Zurich: (1) a warranty contained in the policy; and (2) several representations
made by Zurich to induce Methodist to purchase the policies.  Zurich divided
the no-evidence portion of its motion for summary judgment according to each of
these categories.

A.        Alleged Warranty in the
Policy








In its
motion, Zurich asserted there was no evidence of a warranty in the policy or
that Zurich breached any warranty. In the warranty filing, Methodist alleged
the provision requiring Zurich to Apay . . . the benefits required of
[Methodist] by the workers compensation law@ constituted a warranty that Zurich
would properly perform this obligation to handle and pay claims.  In its
summary-judgment response, Methodist generally contended the policy contained Aa warranty of performance@ but did not cite a specific
provision.  Thus, we will consider only whether the above-quoted policy
provision constituted a warranty.[19]

 Once
again, the principle enunciated in Duddlesten regarding the insurer=s discretion to settle claims negates
Methodist=s contention. We recognize the Duddlesten court addressed a
breach-of-contract, as opposed to breach-of-warranty, action.  Nevertheless,
its reasoning is applicable here because the Duddlesten insured advanced
the exact argument to support its breach-of-contract action that Methodist
urges to support its breach-of-warranty action.  See 110 S.W.3d at 89B90.  Additionally, although breach of
warranty and breach of contract are distinct causes of action with separate
remedies, an express warranty is part of the basis of the bargain and
contractual in nature.  Med. City Dallas, Ltd. v. Carlisle Corp., 251 S.W.3d
55, 60 (Tex. 2008).  Consequently, when ascertaining the parties= intentions in a warranty, we look to
well-established rules for interpretation and construction of contracts.  Id.
at 61. 

As we
have discussed, based on the insurer=s right to settle claims, the Duddlesten
court held that an identical provision did not impose an obligation on the
insurer to properly investigate and adjust claims and pay only valid claims. 
110 S.W.3d at 89B90.  Likewise, because Zurich had the right to settle claims,
this provision cannot have constituted a warranty it would properly handle, and
pay only valid, claims.  Accordingly, Methodist failed to raise a genuine issue
of material fact on existence of a warranty in the policy.[20]








B.        Representations Allegedly
Constituting Warranties

In its
petition, Methodist alleged Zurich made the following representations and
promises to induce Methodist to purchase the policy:

!                  
Zurich would set team meetings for
the applicable account team three times per year to review Zurich=s commitments to Methodist and ensure that Zurich was
meeting them;

!                  
Zurich had experienced and expert
personnel to handle all claims;

!                  
Zurich would provide protection,
listen for and anticipate Methodist=s
risk management needs and offer cost-effective solutions;

!                  
Zurich would provide a customized
claims program that would control Methodist=s
loss costs;

!                  
Zurich would help Methodist
recognize characteristics of fraud and challenge fraudulent claims
successfully;

!                  
Zurich would perform large case
reviews in which Zurich=s team of experts would assure that a systematic
approach is used in establishing an ultimate loss reserve; 

!                  
Zurich would work to ensure that
goals and commitments concerning cost reduction and loss savings were being
met; and

!                  
Zurich would
provide individualized service at a high level and tailored to meet the
particular circumstances and requirements of Methodist.








In its
motion for summary judgment, Zurich asserted there was no evidence of the
following elements:  the representations were statements of fact that
constituted warranties, as opposed to opinions; the representations became part
of the basis of the bargain for the policies applicable to the claims at issue;
Zurich breached the alleged warranties; Methodist suffered resulting injuries;
or Methodist notified Zurich of any breach. 

In
response, Methodist presented the affidavit of Beau Harrison, System Director,
Corporate Risk & Insurance Department for the Risk Management Group of
Methodist.  Harrison averred that Pam Mitchell, Zurich=s Vice-President for customer
service, orally  Awarranted@ the above-cited list of representations while initially
attempting to sell insurance to Methodist.  Harrison further stated he relied
on these representations when deciding to purchase insurance from Zurich and
each year when electing to renew coverage.[21]

The
parties disagree whether these representations were positive averments of fact
as required to constitute warranties.  We will assume, without deciding,
the representations constituted warranties because we conclude Methodist failed
to present evidence of any breach or resulting damages.  To raise a fact issue
on these elements, Methodist relied on Harrison=s affidavit plus McKenney=s deposition testimony.

1.         Harrison=s affidavit

Methodist
contended paragraph 11 of Harrison=s affidavit raised a genuine issue of
material fact on the breach and resulting-damages elements.  After explaining
Methodist=s obligation to reimburse Zurich for payments within the deductible, 
Harrison continued:








By paying claims which were not compensable with
respect to the workers compensation claims of [Fulton-Perez and Riegert],
Zurich caused Methodist to pay for amounts that were not contemplated under the
insurance policy, the Deductible Agreement, or the Specifications to Deductible
Agreement.  Methodist was damaged as a result.  It is my opinion that Zurich
failed to fulfill the Warranties to Methodist and that Zurich=s improper payment of non-compensable
workers compensation benefits for [Fulton-Perez and Riegert] directly resulted
from Zurich=s failure to fulfill the Warranties. More specifically, Zurich=s failure to satisfy the Warranties
caused it to miss the deadline for contesting compensability because Zurich=s adjuster lacked the appropriate
experience and was not properly supervised and because Zurich did not provide
the customized claims programs that it promised.

In the
trial court, Zurich objected that these statements were legal and factual
conclusions and therefore were not competent summary judgment evidence.  The
record does not reflect a ruling on the objections.  However, because a
conclusory affidavit is substantively defective, failure to obtain a ruling on
an objection does not waive a challenge to the defect and the objection may be
considered on appeal.  See Paragon Gen. Contractors, 227 S.W.3d at 883; Pico,
209 S.W.3d at 909.  Conclusory statements in affidavits are insufficient to
raise a fact issue.  Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122
(Tex. 1996);  Paragon Gen. Contractors, 227 S.W.3d at 883; Rizkallah
v. Conner, 952 S.W.2d 580, 587 (Tex. App.CHouston [1st Dist.] 1997, no pet.). 
A conclusory statement is one that does not provide the underlying facts to
support the conclusion.  Paragon Gen. Contractors, 227 S.W.3d at 883; Rizkallah,
952 S.W.2d at 587.  A conclusory statement can be either a legal conclusion or
factual conclusion.  See Rizkallah, 952 S.W.2d at 587.








Harrison=s averments arguably concerned only
two of the representations on which Methodist relied to support its
breach-of-warranty action: AZurich had experienced and expert personnel to handle all
claims@; and AZurich would provide a customized
claims program that would control Methodist=s loss costs.@ Even if Harrison=s affidavit was some evidence Zurich
breached these warranties, his averments regarding resulting damages were at
least factual conclusions.  Harrison asserted Methodist sustained damaged
because it was required to reimburse Zurich for paying benefits for
non-compensable injuries.  Accordingly, Harrison=s contention regarding causation
hinged on his assertion, AZurich=s failure to satisfy the Warranties caused it to miss the deadline
for contesting compensability because Zurich=s adjuster lacked the appropriate
experience and was not properly supervised and because Zurich did not provide
the customized claims programs that it promised.@   

However,
Harrison provided no facts indicating Zurich=s purported inadequacies caused its
failure to challenge compensability of the claims; instead, he merely made a
bare assertion there was a causal connection.  See id. at 587 (holding
plaintiff car owner=s averment in affidavit that certain actions by defendant
mechanic caused damage to plaintiff=s car were conclusory because she
provided no factual support).  In fact, Harrison stated the assertions were his
Aopinion.@  See Ryland Group, Inc.,
924 S.W.2d at 122 (recognizing that an interested witness=s affidavit reciting he Aestimates@ or Abelieves@ certain facts to be true will not
support summary judgment).  Accordingly, Harrison=s averments were substantively
defective and did not constitute evidence that any breach of the warranties
mentioned in paragraph 11 resulted in damages to Methodist.

2.         McKenney=s deposition testimony

At the
time of the injuries at issue, McKenney was employed by Zurich as a workers= compensation team manager.  She
managed a group of adjusters and provided guidance on handling claims,
including those by Methodist employees. In its summary-judgment response,
Methodist cited testimony from McKenney that again arguably concerned only  the
following representations on which Methodist relied to support its
breach-of-warranty action.[22] 








Zurich would set team meetings for
the applicable account team three times per year to review Zurich=s commitments to Methodist and ensure
that Zurich was meeting them.

First,
according to Methodist, McKenney testified she could not recall attending any Ateam meetings@ to ensure Zurich was meeting its
commitments to Methodist.  However, in the exact representation at issue,
Zurich promised to conduct meetings for the applicable Aaccount team@ (emphasis added).  In fact,
consistent with this representation, McKenney was asked:  ADid the [Methodist] account team
at Zurich have any team meetings in 2005 specifically to discuss Zurich=s commitments to [Methodist]?@ (emphasis added).  McKenney
responded she was Anot aware of any meetings that we had to discuss specifically
[Methodist].@  She later clarified she lacked knowledge of Aaccount team@ meetings because A[t]hat was not part of our department@ and Awould be underwriting, risk
management or whoever@ (emphasis added).  Because Aaccount team@ meetings were outside McKenney=s area of knowledge and
responsibility, her testimony was not evidence Methodist breached this warranty
(emphasis added).

Zurich would provide protection, listen
for and anticipate Methodist=s risk management needs and offer
cost-effective solutions.








Next,
Methodist asserted McKenney testified she was unaware of any Acost-effective solutions@ offered by Zurich.  However,
Methodist cited her testimony out of context. McKenney did answer A[n]ot that I am aware of@ when asked whether she or anyone at
Zurich offered Acost effective solutions@ to Methodist in 2005 with respect to
workers= compensation claims.  However, the
full representation at issue clearly concerned Acost-effective solutions@ relative to risk management needsCnot adjustment of claims. In fact,
when asked about Acost-effective solutions,@ she also explained, A[t]hat=s not something I would be asked to
do as a workers= comp team manager@ and she was not involved in risk
management.  Again, because Aanticipating risk management needs and offering
cost-effective solutions@ fell outside McKenney=s realm of knowledge and
responsibility, her testimony was not evidence Zurich breached this warranty.

Zurich would provide a customized
claims program that would control Methodist=s loss costs.

Methodist
further asserted McKenney testified she was unaware of Zurich=s offering any Acustomized claims program@ to control Methodist=s losses despite her responsibility
to ensure claims were properly handled.  However, Methodist misconstrued her
testimony.  She explained she did not know what Methodist=s attorney meant when inquiring about
a Aclaims program@ because A[t]hat=s not part of what=s within my job duties@ and Athat is not something within the
workers= comp department.  That=s an underwriting, risk management or
something [sic] function other than ours.@ Once again, because implementing a Acustomized claims program@ was outside McKenney=s realm of knowledge and
responsibility, her testimony was not evidence Methodist breached the warranty
at issue.








 McKenney
eventually agreed there was no Acustomized@ set of procedures used  to handle claims by Methodist
employees differently than claims by employees of other clients; rather, for
every client, each claim was handled based on the merits and individual facts. 
Thus, Methodist contended McKenney finally admitted there was no Acustomized claims program.@  In this regard, analysis of the
breach element overlaps somewhat with Zurich=s contention Acustomized claims program@ was too general to constitute a
warranty.  Even if the representation regarding a Acustomized-claims program@ related to claims-handling, it is
nevertheless unclear what was meant by the term.  For instance, as Methodist
suggests, Zurich may have meant it would implement unique procedures for
handling Methodist=s employee claims.  As another example, Zurich may have meant
it would ensure all Methodist=s employee claims were handled by certain personnel, which
did occur.  Because the term was not defined, McKenney=s testimony that Zurich lacked a Acustomized@ set of procedures for handling
Methodist=s employee claims was not evidence Zurich failed to implement a Acustomized claims program,@ as warranted. 

Finally,
even if all three representations at issue were intended to relate to
claims-handling and McKenney=s testimony constituted evidence of breach, Methodist
presented no evidence it incurred damages as a result.  Methodist suggested a
fact-finder might infer Zurich adjusters would have contested compensability of
Riegert=s and Fulton-Perez=s pre-existing injuries if the
adjusters had only attended Aaccount team meetings@ or Zurich had implemented Acost-effective solutions@ or Aa customized claims program.@  

This
inference is a leap unsupported by any evidence.  See Ford Motor Co.
v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (stating, for purposes of a
no-evidence summary judgment, although evidence is viewed in light most
favorable to non-movant and generally circumstantial evidence may be used to
establish material fact, A[e]vidence that is so slight as to make any inference a guess
is in legal effect no evidence.@).  Because these terms were quite broad and McKenney was
unaware of their meaning, Methodist presented no evidence indicating how
adjusters= participation in  Aaccount team meetings@ or implementation of Acost-effective solutions@ or Acustomized claims program@ may have affected Zurich=s handling of any claims. 
Accordingly, there was no evidence Zurich=s alleged breach of these warranties
caused its adjusters to improperly handle the claims at issue.

In sum,
Methodist failed to present evidence raising a genuine issue of material fact
in response to Zurich=s no-evidence motion on the breach-of-express-warranty
action.

IV.  Conclusion

The
trial court did not err by granting summary judgment on Methodist=s (1) breach-of-contract action
against Zurich, (2) negligence action against Zurich, McKenney, and Vu, and (3)
breach-of-express-warranty action against Zurich.  








Accordingly, we overrule
Methodist=s sole issue and affirm the trial court=s final judgment in its entirety.

 

 

/s/        Charles W. Seymore

Justice

 

 

 

 

Panel consists of
Justices Frost, Seymore, and Guzman (Frost, J., concurring).

 

 









[1]  We will refer to the two policies applicable to the
workers= compensation claims at issue in this case
collectively as Athe policy@
because the provisions pertinent to our analysis were identical.





[2]  The court also dismissed without prejudice (1) any
breach-of-contract action against McKenney and Vu, although Methodist had
omitted this previously-pleaded claim from its live petition and (2) all
counterclaims against Methodist.  The order was entitled  AAmended@
because a previous order granting summary judgment omitted dismissal of the
counterclaim.  These dismissals are not at issue on appeal.





[3]  In the motions for summary judgment, appellees did
not specifically address Methodist=s
request for declaratory judgment.  However, Methodist requested merely a
declaratory judgment Athat the . . . claims for the pre-existing injuries of
[Riegert and Fulton-Perez] are entirely Zurich=s responsibility.@ Thus, this relief depended on Methodist=s prevailing on its other theories.  Further, on
appeal, Methodist does not contend the trial court granted more relief than
requested in the motions for summary judgment.  See Beathard Joint
Venture v. W. Houston Airport Corp., 72 S.W.3d 426, 436 (Tex. App.CTexarkana 2002, no pet.) (recognizing appellant must
raise issue on appeal that more relief than requested in motion was improperly
granted in summary-judgment order). Thus, we will review summary judgment on
the breach-of-contract, negligence, and breach-of-express-warranty actions.





[4]  Methodist filed its live pleadingCthe fourth amended petitionCafter appellees filed this motion, but before the
trial court granted summary judgment.  Methodist did not add any causes of
action but merely more thoroughly explained the basis for its existing causes
of action.  Appellees= summary-judgment grounds were sufficient to encompass
these causes of action even as subsequently pleaded in the live petition
because they contended Methodist had no cause of action under either theory as
a matter of law.  See Espeche v. Ritzell, 123 S.W.3d 657, 664 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (AIf a motion for summary judgment is sufficiently broad
to encompass later-filed claims, the movant need not amend his motion.@).





[5]  We must note that, relative to all causes of action,
the parties disagree whether Zurich was required to dispute payment of benefits
for pre-existing conditions within the sixty-day deadline for contesting
compensability.   See Tex. Lab. Code Ann. ' 409.021(c) (Vernon 2006).  Zurich maintains a compensability challenge
concerns only whether there was an injury in the course and scope of
employment, whereas extent-of-injury is a separate issue, which may be raised
at any time.  Zurich asserts it was undisputed both Riegert and Fulton-Perez
sustained injuries within the course and scope of their employment.  Zurich
acknowledges the employees sought benefits for pre-existing conditions, but
seems to disagree it paid any such benefits.  However, Zurich did not move for
summary judgment on the ground there was no deadline for challenging payment of
these benefits or on the ground it did not pay any invalid claims.  Instead,
Zurich asserted, in essence, Methodist had no cause of action as a matter of
law based on any payments for invalid claims.  Accordingly, solely for purposes
of evaluating the summary judgments, we will assume Zurich was required to
challenge payment for pre-existing conditions within the compensability
deadline and paid some invalid claims.





[6]  A court recently recognized Head Industries has
since been partially superceded by statute because the Head Industries court
generally declined to recognize a duty of good faith and fair dealing by the
insurer to the insured with respect to handling third-party claims; but suit
was filed before enactment of Texas Insurance Code provisions allowing an
insured to sue its insurer for unfair claims settlement practices.  Chickasha
Cotton Oil Co. v. Houston Gen. Ins. Co., No. 05-00-01789-CV, 2002 WL
1792467, at *7 (Tex. App.CDallas Aug. 6, 2002, no pet.) (not designated for
publication).  However, Head Industries has not been overruled relative
to an insured=s attempt to impose common-law, as opposed to
statutory, duties on an insurer with respect to settling third-party claims.  See
Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 776 (Tex.
2007) (confirming AStowers is
the only common-law tort duty in the context of third-party insurers responding
to settlement demands@).  





[7]  In this summary-judgment ground, appellees addressed
the negligence action against Zurich, but did not specifically present any
ground for negating individual liability of McKenney and Vu.  Nonetheless, on
appeal, Methodist argues only that it had a viable negligence cause of action
against Zurich. Methodist contends Zurich was vicariously liable for the
actions of McKenney and Vu but does not proffer any theory for holding these
individuals liable or assert the trial court granted more relief than requested
in the motion by granting summary judgment in their favor.  Accordingly, we
will address solely whether Methodist had a cause of action against Zurich.





[8]   In its reply brief, Methodist also argues for the
first time that the Deductible Agreement contains a New York choice-of-law
clause but Zurich did not prove entitlement to summary judgment under New York
law on the breach-of-contract and negligence actions.  We may not consider an
issue raised for the first time in a reply brief.  See Gray v. Woodville
Health Care Ctr., 225 S.W.3d 613, 620 (Tex. App.CEl Paso 2006, pet. denied); Howell v. Tex. Workers= Comp. Com=n, 143 S.W.3d 416, 439 (Tex.
App.CAustin 2004, pet. denied).  Additionally, there is no
indication Methodist requested the trial court to apply New York law. 
Accordingly, we review whether Zurich established entitlement to summary
judgment under Texas law.  See Tex. R. Evid. 202; Burlington N. and
Santa Fe Ry. Co. v. Gunderson, Inc., 235 S.W.3d 287, 290 (Tex. App.CFort Worth 2007, pet. withdrawn); Pittsburgh
Corning Corp. v. Walters, 1 S.W.3d 759, 769 (Tex. App.CCorpus Christi 1999, pet. denied). 





[9]   Methodist cites several sources to support its
assertion that an agent owes certain duties to its principal, including the
duty to perform their contract with care: City of Galveston v. State,
217 S.W.3d 466, 478 n.30 (Tex. 2007) (Willett, J., dissenting); Restatement (Third) Of Agency ' 8.07 (2006);  Restatement
(Third) Of Agency ' 8.08 cmt. (b) (2006).





[10]  Zurich presented the affidavit of its attorney who
averred that, at an oral hearing in this case, Methodist=s attorney stated on the record it is not a Acertified@
self-insurer for workers= compensation.  





[11]  We disagree with the concurrence=s suggestion that we have misconstrued Methodist=s argument as relying solely on section 2053.202 to
urge that the parties did not have an insured-insurer relationship, rather than
on the contract or common-law.  We have discussed that Methodist relies on both
the contract and section 2053.202 because we have explained Methodist=s position that the Deductible Agreement (part of the
contract) demonstrated it was a plan under the statute and that Methodist was
self-insured.  Further, we disagree that we have based our conclusion that the
parties had an insured/insurer relationship solely on a finding that section
2053.202 does not apply.  We have discussed why the parties= contract shows an insured/insurer relationship, which
also negates application of section 2053.202.  Finally, we disagree that
Methodist relies on common-law to urge the parties did not have an
insured/insurer relationship.  As we have discussed, Methodist indeed relies on
common-law to argue Zurich owed a duty to Methodist based on the lack of an
insured/insurer relationship, i.e. a duty to perform the contract with care;
but this contention is distinct from Methodist=s reliance on the statute and contract to negate that relationship in
the first place.  To quote Methodist,  A[t]he
relationship between Methodist and Zurich is defined both by contract and by
statute.@  Appellant=s
Brief at p.14.  Of course, we have acknowledged that Methodist seeks to impose
a duty under common-lawCthat is what this Anegligence@ section ultimately concerns. 





[12]  Contrary to the concurrence=s assertion, our decision is grounded on authority
from the Texas Supreme Court, and not just a sister-court case,  because Duddlesten
relied on, and we have quoted, the Head Industries court=s recitation of the rule that an insurer owes no
common-law duty to its insured relative to handling a claim against the insured
outside the Stowers context (the same quotation cited in the
concurrence).  We have emphasized Duddlesten because it is an example of
a court=s applying that rule to facts somewhat similar to this
case, i.e., an insured=s allegation that its insurer improperly paid an
invalid claim against the insured, thereby causing financial loss to the
insured.   Methodist does not seem to dispute the general no-duty law; rather,
it argues this rule is inapplicable in this case because the parties= relationship was not insured/insurer or there is some
sort of exception when a claim falls within the deductible.  Therefore, instead
of discussing the history of the no-duty rule, such as the language in Ranger
County Mutual Insurance Co. v. Guin, 723 S.W.2d 656, 659 (Tex. 1987) later
recognized as dictum, we have focused on application of that established law to
a scenario similar to the present caseCDuddlestenCand rejected Methodist=s contention that this law should not apply to the present case.





[13]  We do not necessarily conclude that, even if the
Deductible Agreement were an optional deductible plan under section  2053.202,
the relationship between Zurich and Methodist lost its character as
insured/insurer or that Zurich owed a duty to perform with care relative to
handling claims within the deductible, despite use of the term Aself-insure@ in
the statute.  We need not reach that issue because we have concluded the
Deductible Agreement was not a plan under section 2053.202. 





[14]  Methodist cites the terms of a ALarge Deductible Endorsement@ attached to the policy when arguing it was latently
ambiguous.  However, the separate Deductible Agreement, which Methodist cited
in its petition and attached to its summary-judgment response, stated that it Agoverns the structure and operation of and the duties
and obligations of each party to this [Deductible] Program and supercedes
any Deductible endorsements to the Policy(ies) . . . @ (emphasis added).





[15]  Methodist also cites testimony of Lisa Schorfheide,
Zurich=s Assistant Vice President and Claims Manager. 
According to Methodist, Schorfheide admitted Zurich owed Methodist contractual
obligations to properly handle claims by testifying the policy required Zurich
to Ahandle . . . and adjust claims in accordance with the
[Texas workers= compensation] rules and statutes@ and that Zurich=s
customers depend on it to correctly dispute non-compensable claims.  However,
Schorfheide=s testimony does not change our analysis because
Zurich=s obligations under the policy are a matter of
contract interpretation and a question of law for the courtCnot subject to a witness=s opinion.  See Matagorda County Hosp. Dist. v. Burwell, 189
S.W.3d 738, 740 (Tex. 2006) (per curiam).  





[16]  Some courts have held the opposite and concluded an
insured must consent to a payment that commits the deductible, despite a
right-to-settle provision, because the insured has a direct financial stake.  See,
e.g., St. Paul Fire & Marine Ins. Co. v. Edge Mem=l Hosp., 584
So.2d 1316, 1324B27 (Ala. 1991); Nat=l Serv. Indus., Inc. v. Hartford Accident & Indem.
Co., 661 F.2d 458, 462 (5th Cir.
1981) (applying Georgia law); see also Jon Epstein, Annotation, Liability
of insurer to insured for settling third-party claim within policy limits
resulting in detriment to insured, 18 A.L.R.5th 474 (1994).  However, these
cases represent the minority view.  See Airborne, Inc., 476 F. Supp. 2d
at 990 n.4. 





[17]  Although these courts in other jurisdictions refused
to nullify a right-to-settle provision solely because the insured=s funds were at stake, they concluded the insurer must
exercise the duty of good faith that is the normal expectation under any
contract.  See Airborne, Inc., 476 F.Supp. 2d at 995; Bartolotta=s Fireworks Co.,
546 N.W.2d at 202B03; Hermann=s Warehouse Corp., 563 A.2d at 448.  We do not address whether Texas law recognizes such
a duty when a workers= compensation carrier adjusts a claim within a
deductible because Methodist did not plead bad faith, but merely negligence. 
These courts did not directly address a negligence allegation although they
seemed to suggest mere negligence was insufficient to negate a right-to-settle
provision when holding the provisions at issue were enforceable because the
evidence showed, at most, Abad judgment@ or Aa bad call@Cnot bad faith.  See Airborne, Inc., 476 F.Supp.
2d at 995; Hermann=s
Warehouse Corp., 563 A.2d at 448; see
also Bartolotta=s
Fireworks Co., 546 N.W.2d at 202B03 (evidence showed, at most, insurer paid too much
for settlementCnot that it acted in bad faith).





[18]  The parties disagree whether a plaintiff must also
prove it notified the defendant of the breach if notification is required by
their agreement.  See Paragon Gen. Contractors, 227 S.W.3d at 886
(listing notification as an element but citing cases in which notification
was not expressly set forth as an element).  We need not decide whether
notification is an element because Methodist failed to present evidence raising
a genuine issue of material fact on breach or resulting damages, which
undisputedly are elements.





[19]  In its live petition and the sections of its
summary-judgment response and brief assailing the no-evidence ground, Methodist
did not specifically mention a warranty contained in the policy; instead, it
focused on the representations allegedly made to induce purchase of the
policies.  However, in the portions of its response and brief that seem
directed toward Zurich=s traditional ground, Methodist argued the policy
contained a warranty.  Because, at some point in its response and brief,
Methodist mentioned a purported warranty in the policy, we will consider
whether reliance on the above-quoted policy language raised a genuine issue of
material fact regarding existence of a warranty sufficient to defeat the
no-evidence motion.





[20]  Zurich mentioned Duddlesten only with respect
to its motion for summary judgment on breach of contract and negligence. 
Relative to the breach-of-warranty action, the parties focused on whether any
promise to properly handle, and pay only valid, claims sounded in warranty in
addition to contract.  Nonetheless, because we are now addressing a no-evidence
motion, once Zurich asserted there was no evidence of a warranty, the burden shifted
to Methodist to raise a fact issue on existence of a warranty; therefore, we
may rely on the Duddlesten principle when determining that Methodist
failed to meet that burden.  See Chrismon v. Brown, 246 S.W.3d
102, 113 n.12 (Tex. App.CHouston [14th Dist.] 2007, no pet.) (stating motion
for summary judgment asserting simply there was no evidence of duty element of
negligence action shifted burden to non-movant to raise fact issue and allowed
court to consider legal principle pertinent to duty analysis although principal
was not mentioned in the no-evidence motion); Pico, 209 S.W.3d at 912
(same). We need not decide whether a promise to properly handle, and pay only
valid, claims sounded in both contract and warranty because the policy
contained no such promise. 





[21]  In the warranty filing, Methodist asserted the
representations forming the basis for its breach-of-express-warranty action
were contained in a risk binder issued by Zurich.  When moving for summary
judgment, Zurich contended, for several reasons, the representations in the
risk binder did not form the basis of the bargain for the policies at issue and
were no longer effective once these policies were issued.  In its response,
Methodist attempted to avoid summary judgment on this ground by contending
Zurich was mistaken regarding the source of the representations, although
Zurich merely relied on Methodist=s
own warranty filing regarding their source.  Methodist asserted the
representations were made orally by Mitchell to Harrison, although they were
also subsequently outlined in the risk binder, and extended to all subsequent
policies at issue.  Because Methodist relied on Harrison=s affidavit in response to the no-evidence motion, we
will consider Zurich=s oral statements to him as the source of the
representations when evaluating the summary judgment.  Further, regardless of
the source of the representations, Methodist failed to present evidence Zurich
breached these representations or that any breach resulted in damages to
Methodist.





[22]  Methodist did not present averments from Harrison or
cite testimony by McKenney to support the breach or causation elements relative
to some of the representations on which Methodist based its action for breach
of express warranty.  Because Methodist was required to point out in its
response evidence raising a fact issue on the challenged elements, Methodist
failed to raise a fact issue on breach of these representations or any
resulting damages.